J. Kehheth Seevé, S.
Harry L. Brown and Pearl B. Brown, his wife, on the 6th day of September, 1958 executed a single instrument as their joint last will and testament. Harry L. Brown died a resident of the Town of Carlton, Orleans County, New York on the 24th day of September, 1959 and his wife, Pearl B. Brown, died a resident of the same town on the 30th day of September, 1959. No changes were made in their joint will between the date they executed the same and the dates of their respective deaths. On the 14th day of October, 1959 the afore-mentioned joint will was admitted to probate in the Surrogate’s Court of Orleans County, New York as the last will and testament of the said Pearl B. Brown, and on the 19th day of October, 1959 the said joint will was admitted to probate in the same court as the last will and testament of the said Harry L. Brown.
Letters testamentary were issued to Buth I. Brown as executrix of the said will of Pearl B. Brown on the 14th day of October, 1959 and of the will of the said Harry L. Brown on the 19th day of October, 1959.
*1013 The executrix in each of the above-entitled estates has filed her petition for a judicial settlement and has requested a construction of the joint will to determine the distribution of the properties of the said estates and also to have the joint will construed on the following questions:
“ (1) Are the legacies of Eastman Kodak Company common stock mentioned in the bequests in the clauses of said joint will ‘ Fourth ’ to ‘ Seventh both inclusive general or demonstrative legacies or are they specific legacies?
“ (2) Are all stock and cash dividends with record dates subsequent to September 30th, 1959, the date of the death of the said Pearl R. Brown, part of the residuary estate given and bequeathed in the clause of said joint Will numbered 1 Eighth ’?
“ (3) Because of the split of common stock of Eastman Kodak Company of two shares for one to stockholders of record on March 9th, 1959 are the various legatees mentioned in the clauses of said joint Will numbered ‘ Fourth ’ to ‘ Seventh ’, both inclusive, entitled to the benefit of said stock split or, in other words, are they entitled to receive twice the number of shares mentioned in the bequests to them in said clauses ‘ Fourth ’ to ‘ Seventh ’, both inclusive, or do the shares of stock received on said stock split enure to the benefit of the residuary legatees under the ‘ Eighth ’ clause of said joint Will?
“ (4) Generally a construction of said joint Will so far as necessary or proper to determine the distribution of the properties of said joint estates and in any way connected with or relating to the judicial settlement of the accounts of your petitioner as executrix of the estates of Harry L. Brown and Pearl R. Brown.”
On September 6, 1958, the date of the execution of the aforementioned joint will, there were listed in the joint names of Harry L. Brown and Pearl R. Brown as joint tenants with right of survivorship 2,234 shares of common stock of Eastman Kodak Company. The joint will was executed on Saturday when the New York Stock Exchange was closed. On Friday, September 5, 1958 the mean value of the said stock was $1231/4 per share. On Monday, September 8, 1958 the mean value of the said stock was $127iR« per share. Taking into consideration the aforesaid mean values, the approximate value per share of Eastman Kodak Company common stock on the date the will was executed was $125/2 per share.
The Eastman Kodak Company common stock was split two for one and payable to stockholders of record on the 9th day of March, 1959. On the 13th day of April, 1959, approximately seven months and six days after the execution of the joint will, *1014 there were issued in the names of Harry L. Brown and Pearl B. Brown 2,234 additional shares of said stock, making a total of 4,468 shares of such stock held by them in their joint names with right of survivorship.
On the 30th day of September, 1959, the date of the death of the survivor, Pearl B. Brown, the mean value of the Eastman Kodak Company stock was $87.0625 per share or approximately $38 per share less than the value at the time of the execution of the joint will. The market value of two shares of said stock on September 30, 1959 would be about $175 or approximately $69 more than the value of one share at the time of the execution of the joint will.
Paragraphs Fourth to Seventh inclusive, which the accounting executrix has requested a construction of read as follows:
1 ‘ Fourth : At and after our death, we do hereby give and bequeath four hundred twenty-four (424) shares of the common capital stock of Eastman Kodak Corporation unto each of the following: Pauline Anderson Buth I. Brown and Angilean Brown.
“Fifth: At and after our death, we do hereby give and bequeath three hundred (300) shares of the common capital stock of the Eastman Kodak Corporation unto CLAYTON ANDEBSON.
‘ ‘ Sixth : At and after our death we do hereby give and bequeath unto each of our grandchildren, viz- Bobert W. Anderson, Jean Anderson Heard, Dorothy Jane Takash and Balph B. Brown, forty (40) shares of the common capital stock of Eastman Kodak Corporation.
“ Seventh: At and after our death, we do hereby give and bequeath unto the Carlton Baptist Church and to the First Presbyterian Church of Albion, New York, unto each eight (8) shares of the common capital stock of Eastman Kodak Corporation.”
The residue of the estate was equally divided among Bobert Balph Brown, Pauline Anderson and Buth I. Brown, the children of the deceased, Harry L. Brown and Pearl B. Brown. The will further provided that all bequests, devises and provisions of the joint will should vest at the death of the survivor of the makers of the joint will except a farm which had been bequeathed to the son, Bobert Balph Brown. This farm was owned by Harry L. Brown, individually and not jointly.
As to the construction of the above-quoted paragraphs Fourth, Fieth, Sixth and Seventh, the issue is whether such provisions are classified as general, demonstrative or specific *1015 legacies. The determination of such question is important in that if such legacies are construed to be specific, then each of such legatees will receive double the number of shares of Eastman Kodak Company stock stated in such clauses. The question, who will be entitled to receive dividends paid on such stock since the death of Pearl R. Brown, the survivor of the makers of the joint will, will necessarily be involved in classifying such legacies as general or specific.
Legacies are gifts of personal property and depending upon their nature, they are classed as general, specific, or demonstrative. (Matter of Hardenbergh, 203 Misc. 733.) The determination of whether a legacy is specific depends upon finding the intention of the testator in the language of the will. The intent of the testator is discoverable not only from the language used in the bequest, but the intent must be sought from the entire will. (Davis v. Crandall, 101 N. Y. 311; Matter of Security Trust Co., 221 N. Y. 213.)
Crawford v. McCarthy (159 N. Y. 514) is a much-quoted case and contains the classic definitions of general, demonstrative and specific legacies. At pages 518 and 519, the court defined legacies as follows: “A general legacy is a gift of personal property by a last will and testament, not amounting to a bequest of a particular thing or money, or of a particular fund designated from all others of the same kind. A specific legacy is a bequest of. a specified part of a testator’s personal estate distinguished from all others of the same kind. A demonstrative legacy is a bequest of a certain sum of money, stock or the like, payable out of a particular fund or security. For example, the bequest to a individual of the sum of $1,500 is a general legacy. A bequest to an individual of the proceeds of a bond and mortgage, particularly describing it, is a specific legacy. A bequest of the sum of $1,500 payable out of the proceeds of a specified bond and mortgage, is a demonstrative legacy. A demonstrative legacy partakes of the nature of a general legacy by bequeathing a specified amount and also of the nature of a specific legacy by pointing out the fund from which the payment is to be made; but differs from a specific legacy in the particular, that if the fund pointed out for the payment of the legacy fails, resort may be had to the general assets of the estate.”
The inclination of the courts is to hold that legacies are general and not specific. The basis for such judicial leaning is set forth in the ease of Tifft v. Porter (8 N. Y. 516) at page 521 where the court states ‘ ‘ The presumption is stronger that a testator intends some benefit to a legatee, than that he intends *1016 a benefit only upon the collateral condition that he shall remain till death, owner of the property bequeathed. The motives which ordinarily determine men in selecting legatees, are their feelings of regard, and the presumption of course is that their feelings continue and they are looked upon as likely to continue. An intention of benefit being once expressed, to make its taking effect turn upon the contingency of the condition of the testator’s property being unchanged, instead of upon the continuance of the same feelings which in the first instance prompted the selection of the legatee, requires, as it ought, clear language to convey that intention. The rule as settled, accords best with the dictates of experience as to the probable purposes which actuate men in disposing of their property by will.”
Mr. and Mrs. Brown by paragraphs Fourth to Seventh inclusive bequeathed 1,748 shares of common stock of Eastman Kodak Company and at the time of executing their joint will, they were the owners as joint tenants with right of survivorship of 2,234 shares of the same stock. Mrs. Brown at that time held in her individual name 105 shares of the same stock. The balance of the Eastman stock was disposed of by the residuary clause in the joint will. On March 9, 1959, by virtue of the stock split, they were the owners as joint tenants of 4,468 shares of Eastman Kodak Company common stock and Mrs. Brown then owned individually 210 shares of the same stock.
At the time of their respective deaths, they were the owners of the same number of shares as they owned on March 9, 1959, except that Mrs. Brown, by reason of her surviyorship, became the sole owner of the Eastman stock, which had been heretofore owned jointly., “ The mere possession by the testator at the date of his will of stock of equal or larger amount than the legacy, will not of itself make the bequest specific.” (Tifft v. Porter, supra, p. 518.)
In Brundage v. Brundage (60 N. Y. 544), the testator bequeathed 20 shares of New York Central Railroad stock to a certain beneficiary for life. At the time of the execution of his will, and of his death, the testator owned shares of stock of that company. The court held that the bequest was a general legacy and at page 548 commented as followsIt is to be observed, that he did not bequeath to her any specific share, definitely described by numbers or otherwise. Had he died without owning any shares of the stock of the New York Central Railroad Company, the legacy to his widow would not have been adeemed and it could have been made good, by the purchase and transfer to her of any shares, to the number given, to be had in the market * * * it is not different if, to satisfy the *1017 legacy, the executors make use of shares found among the assets of the testator.”
In the case of Matter of Morphy (70 N. Y. S. 2d 167) the court in construing a clause which bequeathed 10 shares of Eastman Kodak Company common stock, as a general legacy stated (p. 170) “ For the most part the testatrix has not used words which would identify any particular bond or share of stock or item of property given in the will, and has not referred to it as being in her possession at the date of the execution of the will. Most of the securities referred to in her will are listed on the major stock exchanges; and the testatrix had no close personal association with any company the securities of which are mentioned in her will.”
In some cases where shares of stock have been bequeathed, the courts have held such a legacy to be specific, but this departure from the general rule has usually occurred where the testator has indicated by definite language in his will that he was only referring to the stock that he then owned or where the shares of stock in question represented interests in family or private corporations. (Matter of Security Trust Co., supra; Matter of Mitchell, 114 Misc. 370, Matter of Strasenburgh, 136 Misc. 91.) The principles enunciated in those cases, do not apply in the instant case.
Despite the fact, that approximately six months prior to their deaths, their stock holdings in Eastman Kodak Company had been doubled as a result of such stock split, Mr. and Mrs. Brown made no changes in their joint will. Such inaction on their part becomes significant, when one is seeking to discover the intention of the makers of the joint will.
In describing the Eastman Kodak stock, Mr. and Mrs. Brown did not identify the stock by stock certificate number and they did not refer to the same as “ our ” stock or “ such stock as we now own ”. There was no earmarking of any kind. There is nothing in the joint will to suggest or indicate that, when Mr. and Mrs. Brown executed their joint will, that, they were only referring to the Eastman stock that they then owned. The description of the Eastman stock in paragraphs Fourth to Seventh amounted to merely a general description of a commodity, which was available on the open market. 11 Where there is no indication of a contrary intent expressed in the will, a gift of stock dealt in by the general public on public exchanges is a general legacy.” (Matter of Harris, 143 N. Y. S. 2d 157, 158.) A bequest of a public security available for purchase in the open market is a general legacy where the testator does not specify any particular share of stock by serial number or *1018 otherwise, despite the fact, that, the testator may own on the date of the execution of his will an equal or larger amount of shares than the legacy.
If the legacies are specific, the legatees are entitled to the income from the date of the death of Pearl B. Brown. If the legacies are general, the income from the date of death to such time as distribution should have been made falls into the residue of the estate. (Matter of Security Trust Co., supra.)
I find and determine that the legacies of Eastman Kodak Company common stock provided in clauses Fourth to Seventh, both inclusive, of the joint will are general legacies.
As to the second question, I find and determine that all stock and cash dividends as to the Eastman stock mentioned in the afore-mentioned paragraphs Fourth to Seventh, inclusive, with record dates subsequent to September 30, 1959, the date of the death of the said Pearl B. Brown, and up to May 15, 1960, which date is seven months subsequent to the issuance of letters testamentary upon the estate of Pearl B. Brown, belong to the residuary estate. I do further find and determine that the respective legatees of the Eastman stock mentioned in said paragraphs Fourth to Seventh, inclusive, were entitled on May 15, 1960 to the delivery of the shares of Eastman stock so bequeathed to them and such legatees are entitled to all stock and cash dividends with record dates on or after May 15, I960* which were declared in relation to the said shares of Eastman stock so bequeathed to them.
The next question to be determined is whether the debts, funeral and administration expenses, including attorneys’ fees, in the estate of Harry L. Brown, are to be paid out of the assets individually owned by him at the time of his death, or is the property which he owned with his wife, Pearl B. Brown, as joint tenants with right of survivorship, to be used as a source of payment for such debts and expenses. In finding the answer to this question, it is necessary to examine the language of the joint will to determine the intention of the testators.
At the time of Harry L. Brown’s death, he was the sole owner of real property with an appraised value of $38,900 and individually owned personal property in the amount of $1,843. The main part of the personal property consisted of the contents of his residence and personal effects and the total appraised value of the same was $1,703. At the time of death, he was also the owner with his wife, Pearl B. Brown, as joint tenants with right of survivorship, of personal property, which consisted of two bank accounts in the amount of $56,101.42 and stocks with an appraised value of $410,478.45. The debts of the *1019 decedent, Harry L. Brown, together with the funeral and administration expenses, excluding attorneys’ fees and estate taxes, amounted to $1,780.24. If the jointly owned personal property is not resorted to for the payment of the debts, funeral and administration expenses in the Harry L. Brown estate, then, it will be necessary to seek payment of the same from the real estate.
Ordinarily, when the title to personal property is held by two persons as joint tenants with right of survivorship, upon the death of one, the sole and exclusive title to such property passes to the survivor by operation of law and is not affected by the terms of the will of the first to die. Such general rule will apply in this case, unless the makers of the joint will have by its terms caused such jointly owned property to be liable for the payment of the decedent’s debts, funeral and administration expenses.
Property held by two persons as joint tenants with right of survivorship and property held by husband and wife as tenants by the entirety, though not exactly the same, have certain characteristics in common. In the case of Azzara v. Azzara (1 A D 2d 1012), the court said “ While neither a husband nor a wife can dispose of property owned by them as tenants by the entirety so as to affect the right of survivorship, they may do so by acting in concert, or by joint will, or by a contract.” In this case, the makers of the joint will could, by the terms of such instrument, affect the right of survivorship as to the jointly owned property by using such language whereby an intent could be spelled out that they intended their jointly owned property to be subject to the final debts, funeral and administration expenses of the first joint tenant to die.
A joint will is a single testamentary instrument, which contains the wills of two or more persons, is executed jointly by them, and disposes of property owned jointly, in common, or in severalty by them. (57 Am. Jur., Wills, § 681.)
In the paragraph designated First of the joint will, the testators provided that“ We direct the payment of our funeral expenses, our just debts and the expenses of administering our estate.” It is significant that they said “ our estate ” and not our estates. Such language is indicative of their intent to have their testamentary affairs administered as a single unit and that their property, whether jointly or individually owned, was to be considered and administered as a common fund. In their joint will, the testators did not devise and bequeath their property to the survivor and in this respect the will was not reciprocal.
*1020 In paragraph designated Second, the testators provided as follows: “ If our son, Robert Ralph Brown, survives the said Harry L. Brown, the testator herein, then we do hereby give and devise to him all real estate owned by us.” However, the testators made this devise subject to the conditions expressed in paragraph designated Third wherein it was provided that Pearl R. Brown, one of the testators, and Ruth I. Brown,, a daughter of the testators, would have a right to reside in ‘ ‘ our home ” situate on the farm as long as Pearl R. Brown should live and on the further condition that Robert Ralph Brown would properly take care of the lawn and the grounds and the rose garden surrounding “ our home ”.
The real property in question was individually owned by Harry L. Brown at the time of making his will and also at the time of his death, and it was upon such real estate that the afore-mentioned home was located. The above-quoted paragraph Second is the only clause in the will which devises real estate. All of the other dispositive clauses of the joint will, including the residuary clause, refer to personal property.
The joint will having been admitted to probate as the will of testators, it must be presumed that the testators knew, at the time they executed the same, the extent and character of their property and whether the same was jointly or severally owned. (1 Davids, New York Law of Wills, p. 76.) Both Mr. and Mrs. Brown must have known that, in the event Harry L. Brown died first, that, the personal property individually owned by him was small in value and would be insufficient to pay his debts, funeral and administration expenses. Unless the testators intended that the jointly owned property would be liable for the payment of such debts, funeral and administration expenses, the real property devised to their son would have to be sold. In case of the sale of the real property, the devise to their only son, Robert Ralph Brown, would be an empty gesture and would also frustrate the wishes of the testators as expressed in paragraph Third, wherein they stated that the testatrix, Pearl R. Brown, should have the right to live in “ our home ”. If the testators had intended that their jointly owned property by reason of the element of survivorship would be absolved from the liability for debts, funeral and administration expenses of Harry L. Brown, then, the directions and commands of the testator as expressed in paragraph Third that the devisee should ‘ ‘ properly take care of the lawn and grounds and the rose garden surrounding our home ” would be futile expressions of their affectionate regard for their home.
*1021 It would be an unreasonable and strained construction of the language used by the testators to say they intended to free their jointly owned property from the liability for the debts, funeral and administration expenses of Harry L. Brown, the testator first to die, and thereby compel the real property to be sold and in consequence thereof to nullify so many of their wishes as expressed in paragraph Third of their joint will. By the opposite construction, that is, that the jointly owned property was subject to the payment of the aforesaid debts, funeral and administration expenses, then all provisions of the will could be carried out. This latter construction is also substantiated when paragraphs designated Fourth to Eighth, inclusive, are examined. By paragraph Second the testators devised all their real estate. Paragraphs Fourth to Eighth, inclusive, and the Eighth paragraph being the residuary clause, pertain only to personal property. The introductory language to each of the paragraphs designated Fourth to Eighth inclusive is as follows: “ At and after our death we do hereby give and bequeath”. This language portrays the intent of the testators that their testamentary plan should be administered as one estate. All property, whether jointly or severally owned, was to be united for testamentary purposes in one estate.
I do hereby find and determine that it was the intention of the testators to have their estate administered as one unit and that it was the intention of the testators, as expressed in their joint will, that the property owned by them as joint tenants with right of survivorship was to be liable for the payment of the debts, funeral and administration expenses of Harry L. Brown, deceased.
I do further find and determine that the personal property individually owned by Harry L. Brown shall be first applied toward the payment of his debts, funeral and administration expenses and upon exhaustion of the same, then, the personal property owned by him and his wife, Pearl R. Brown, as joint tenants with right of survivorship, shall be used to the extent necessary in the payment of his debts, funeral and administration expenses; and that the real property devised to Robert Ralph Brown shall not be resorted to for such payments until the afore-mentioned personal property is exhausted.
In paragraph Ninth of the joint will the testators provided as follows: “ We do further will and direct that all inheritance or estate taxes that shall be taxed or become due and payable upon the legacies herein bequeathed to our said children and grandchildren, shall be paid by our said legatees respectively.” In this quoted provision there is no mention made of devises, *1022 even though the testators did devise their real estate to their son, Robert Ralph Brown. By the terms of paragraph Fifth of their joint will, the testators bequeathed to their son-in-law, Clayton Anderson, 300 shares of Eastman Kodak common stock. The above-quoted provision as to the payment of inheritance taxes refers to children and grandchildren and does not mention the term son-in-law. The language of paragraph Ninth raises the following questions as to the apportionment of the estate taxes: (1) Is Robert Ralph Brown required to pay his proportionate share of the estate taxes by reason of the devise to him of the testators’ real estate? (2) Is Clayton Anderson, the son-in-law of the testators, required to pay his proportionate share of the estate taxes by reason of the afore-mentioned legacy?
Section 124 of the Decedent Estate Law requires apportionment of estate taxes unless the testators otherwise direct as to apportionment in clear and unambiguous terms. In Matter of Mills (189 Misc. 136, 142, affd. 272 App. Div. 229, affd. 297 N. Y. 1012) the court said: “ The question of allocation should not he approached as would a construction question where at all events the meaning of the text must be determined from the content of the will. In a tax allocation problem the text of the will is to be scanned only to see if there is a clear direction not to apportion; and if such explicit direction is not found, construction of text ceases because the statute states the rule.”
In the instant case there is no clear and explicit instruction not to apportion. There is only an inference from the language of paragraph Ninth by the omission of words “devise” and “ son-in-law ”, that the devise to Robert Ralph Brown and the legacy to Clayton Anderson may not he subject to the apportionment of estate taxes. I find and determine that the devise to Robert Ralph Brown in paragraph Second and the legacy to Clayton Anderson in paragraph Fifth are both subject to apportionment of estate taxes in accordance with the provisions of section 124 of the Decedent Estate Law.