172 So.2d 312 (1965)
Succession of Joseph Merrick JONES.
No. 1706.
Court of Appeal of Louisiana, Fourth Circuit.
February 8, 1965.
Rehearing Denied March 8, 1965.
Writ Refused May 3, 1965.
*313 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, J. Mort Walker, Jr., and Lucius F. Suthon, New Orleans, for appellants Dr. Joseph C. Morris and Joseph Merrick Jones, Jr., testamentary co-executors.
Richard B. Montgomery, Jr., New Orleans, for appellee, Alexander E. Rainold.
Before McBRIDE, SAMUEL and TURNER, JJ.
McBRIDE, Judge.
The question presented is whether the provisions of decedent's will, dated March 6, 1963 (duly probated and ordered executed herein), operate as a direction against the apportionment of the federal estate tax (26 U.S.C.A. Int.Rev.Code, § 2001 et seq.) as to the $50,000.00 particular legacy to Alexander E. Rainold, and whether said legatee of decedent's estate is to pay the Louisiana inheritance tax (LSA-R.S. 47:2401 et seq.) bearing against said legacy. In a summary proceeding instituted below by the legatee, it was held that certain "clear and unequivocal" language in the will exonerated the legatee from apportionment and shifted liability for payment of the state inheritance tax from the legatee to the succession. The executors were ordered either to deliver the amount of the legacy, plus interest, without deduction, or to file an account recognizing Judge Rainold as being entitled to $50,000.00, plus interest, free from tax liability. The executors appealed from the judgment.
The federal law, which levies the tax on the whole net estate transferred from the dead to the living, makes no effort to apportion that tax except in instances of life insurance passing directly to beneficiaries and certain property subject to powers of appointment. However, under specific provision of the federal statute, the testator has full power to direct an apportioning of the federal tax amongst the various legatees in any manner he desires. See Succession of Henderson, 211 La. 707, 30 So.2d 809 (1947). Thus in the absence of such direction by the testator, the full brunt of federal taxation was borne by the residuary estate, which circumstance imposed hardship upon the residuary legatee. By Act 362 of 1960 our legislature amended the Revised Statutes by adding thereto LSA-R.S. 9:2431 through 9:2438 providing for the apportionment of state and federal estate transfer taxes if the deceased has made no provision in his testament for the apportionment of the tax *314 among the persons interested in the estate. In such event:
"* * * the tax shall be apportioned among them by the court in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate. * * *
"If the deceased has provided in his testament for the apportionment of the tax among all the persons interested in the estate, the court shall apportion the tax as directed by the deceased." LSA-R.S. 9:2432.
By his first disposition, decedent made his "beloved wife" a particular legatee by leaving her one-half of his separate property and his community interest in the family home; secondly, to two of his three children he separately bequeathed certain parcels of real estate. The next paragraph provides:
"I leave to the Eugenie and Joseph Jones Family Foundation, a charitable foundation created by notarial act before Lucius F. Suthon, a Notary Public for the Parish of Orleans, State of Louisiana, on the 26th day of July, 1955, one-third of my net estate after the payment of all debts, Federal Estate taxes and Louisiana Inheritance taxes, and after payment of the special bequests made by me." (Italics ours.)
Fifteen additional special pecuniary gifts and bequests ($426,000.00 in the aggregate) are then made to relatives, in-laws and friends, the first of which is, "I leave to my friend, Alexander E. Rainold, the sum of Fifty Thousand Dollars ($50,000.00)."
Finally, all of the remainder of the property of which the testator died possessed is left in trust to his three children, or to the descendants of any who should predecease the testator.
Decedent's estate it is said is valued in excess of four million dollars. We understand the proportionate share of the estate tax on a $50,000.00 legacy will amount to about $20,000.00, and that the state inheritance tax to be paid thereon would be approximately $5,000.00. Thus, if appellee is subjected to an apportionment of the federal tax and is required to pay the local inheritance tax, the legacy would in effect be reduced by one-half.
The rule of apportionment provided by LSA-R.S. 9:2432 must be followed unless the testator has made provisions in the will for the apportioning of the tax among the persons interested in the estate in the manner he desires.
No case has been presented to an appellate court in Louisiana wherein the issue was whether the testator's language constituted a direction against apportionment. The only case in this state in which there is mention of the statute is Succession of Harper, La.App., 147 So.2d 425 (1963). The question before us was not an issue in the above case as the decedent had clearly provided that all estate taxes due to the United States, and all inheritance taxes due to any state by the legatees, be paid out of the mass of the estate before distribution.
Apportionment statutes have been in force in several other states. The earliest statute of such type was enacted in New York in 1930. The statutes naturally gave rise to a volume of jurisprudence, some of which is pertinent to the issues before us.
The testator's intent to free a legacy from apportionment must be clear and unambiguous, since the practicable effect of such intent is to increase the particular gift and shift the burden of taxation elsewhere. In re Myers' Trust, 20 Misc.2d 990, 190 N.Y.S.2d 566 (1959); In re Brown's Will, 26 Misc.2d 1011, 209 N.Y.S.2d 465 (1961); Jerome v. Jerome, 139 Conn. 285, 93 A.2d 139 (1952); Bouse v. Hutzler, 180 Md. 682, 26 A.2d 767, 141 A.L.R. 843 (1942); Wilmington Trust Co. v. Copeland, *315 33 Del.Ch. 399, 94 A.2d 703, 708 (1953).
If there is any doubt respecting the testator's direction as to who is to bear the estate taxes, a construction will be accorded the testator's language which benefits persons who are the object of his concern, such as his surviving spouse and children. In re Vanderbilt's Estate, 180 Misc. 431, 39 N.Y.S.2d 941 (1943) aff'd, Sur., 56 N.Y.S.2d 395 (1945), aff'd 295 N.Y. 964, 68 N.E.2d 50 (1946); In re Herzog's Will, Sur., 94 N.Y.S.2d 109 (1949); In re Manville's Will, Sur., 102 N.Y.S.2d 530 (1950) aff'd 278 App.Div. 954, 105 N.Y.S.2d 979 (1951); Commercial Trust Co. of New Jersey v. Kohl, 140 N.J.Eq. 294, 54 A.2d 473 (1947); In re Spangenberg's Estate, 359 Pa. 353, 59 A.2d 103 (1948).
The only requirement is that the will sufficiently express an intention that the tax burden shall be changed. A few simple words may suffice to indicate the intent and effectuate the purpose. Starr v. Watrous (1933) 116 Conn. 448, 165 A. 459. See also Re Johnson's Estate (1935) 220 Iowa 424, 262 N.W. 811; State v. Norval Hotel Co. (1921) 103 Ohio St. 361, 133 N.E. 75, 19 A.L.R. 637; Brown's Estate (1902) 12 Pa.Dist. 123, aff'd 208 Pa. 161, 57 A. 360.
Clarity does not require that a direction against apportionment be couched in negative terms. Matter of Halle's Will, 270 App.Div. 619, 61 N.Y.S.2d 694; Matter of Aldrich's Will, 259 App.Div. 162, 18 N. Y.S.2d 420.
In cases construing tax clauses it is sometimes said that the real question is, not what did the testator mean to say, but what did he mean by what he said. Re Parker's Estate (1950) 98 Cal.App.2d 393, 220 P.2d 580; McLaughlin v. Green (1949) 136 Conn. 138, 69 A.2d 289, 15 A.L.R.2d 1210; Commercial Trust Co. v. Thurber (1945) 136 N.J.Eq. 471, 42 A.2d 571, affd. 137 N.J.Eq. 457, 45 A.2d 672.
It will be noted that the testator by the third dispositive paragraph of the will left to the Jones Family Foundation, "one-third of my net estate after the payment of all debts, Federal Estate taxes and Louisiana Inheritance taxes, and after payment of the special bequests made by me." He, thus, in effect directed his executors to pay the taxes mentioned along with his debts. There can be no doubt that the specification of federal estate taxes and Louisiana inheritance taxes, items which are outside the category of debts and other charges against the estate and which ordinarily would have no place in such grouping, must be held to have been inserted deliberately by the testator for a special purpose. Joseph Merrick Jones must be presumed to have known that unless he provided otherwise, the taxes mentioned would have to be borne by the particular legatees through apportionment and by deduction. Therefore, the presence of the provisions that one-third of his net estate, that is one-third of the residuary portion, shall be taken by the Foundation only after the payment of debts, taxes and after the payment of the particular legacies evinced an intention that the taxes be paid in the same manner as the debts, i. e. out of the general estate. The testator established his own formula for computing his net estate. His debts, the taxes and the particular legacies are to be paid and then whatever is left is to go in the proportion of one-third to the Foundation with the remainder going to his three children in indivision. It seems to us he meant that the taxes were to be borne, in the final analysis, by the residuary estate, and there was to be no apportionment. This conclusion is fortified by the fact that the testator was a prominent and experienced member of the New Orleans bar and headed one of the largest law firms in this city. He was a skilled draftsman and expressed his desires with simplicity and brevity but with full knowledge and recognition of the legal requirements.
*316 It must be presumed that an attorney knows the law and has clearly expressed his intention in drafting a will. In re Stadtfeld's Estate, 359 Pa. 147, 58 A.2d 478 (1948); In re Aldrich's Will, 259 App.Div. 162, 18 N.Y.S.2d 420 (1940).
The provisions of the will in Starr v. Watrous, supra, are analogous with those in the instant will, and the court held there was a direction against apportionment.
Taxes are a charge against and must be deducted from the general estate where there is a single direction that the executor shall pay debts, expenses of administration, and taxes. Re Grondin's Estate (1953) 98 N.H. 313, 100 A.2d 160; Re James' Estate (1943) 180 Misc. 441, 40 N.Y.S.2d 4, aff'd without op. 267 App.Div. 761, 45 N.Y.S.2d 938, leave to app. den. 267 App.Div. 820, 47 N.Y.S.2d 110; Re Sykes' Will (1945, Sur.) 53 N.Y.S.2d 442.
The testator well knew that the federal estate tax is levied upon the transferring of a decedent's estate to his heirs whilst the state inheritance tax is a tax upon legacies, inheritances and donations to be borne by the legatees, heirs and donees. It is a tax on the right to inherit. It seems reasonable to suppose if it had been the testator's intention that there be an apportionment of the federal tax in accordance with the Louisiana statute and that the particular legatees were to bear the state inheritance tax to the extent it affected the legacies of each, any reference to taxes surely would have been omitted from the will. If no reference to taxes had been made, the executors would have been bound by the terms of the federal statute to pay the estate tax routinely, since no direction for payment was necessary. As to the Louisiana inheritance tax, the testator knew that the amount due on each legacy is fixed summarily by rule before the court having jurisdiction of the succession and that his executors would be required to pay the tax collector the amount so fixed (LSA-R.S. 47:2407), all without his direction. The fact that the testator directed payment of taxes, when he need not have mentioned taxes, can only lead to the conclusion we have already reached that the succession was to absorb the taxes, which amounts to a direction against apportionment.
If the executors' position is to be accepted as valid, then we would be required to place a strained construction on the testator's language by holding the direction to pay the taxes along with the debts is mere surplusage.
With reference to tax clauses in wills, courts are bound to regard all words in their usual and most known signification, according to their natural and reasonable meaning. Palmer v. Palmer (1944) 135 N.J.Eq. 516, 39 A.2d 438. And see Re Johnson's Estate, supra.
To determine the intention of the testator the whole will is to be taken into consideration. Every word must be given effect if that can be done without defeating the general purpose of the will which is to be made effective in every reasonable method. Succession of Fath, 144 La. 463, 80 So. 659; Gueydan v. Montagne, 109 La. 38, 33 So. 61; Succession of Allen, 48 La. Ann. 1036, 20 So. 193. No part of the testament should be rejected, except that which the law makes it necessary to reject. Succession of Price, 202 La. 842, 13 So.2d 240; Succession of La Barre, 179 La. 45, 46, 153 So. 15.
Numbered among the particular legatees are decedent's wife, the two children he favored with particular bequests over the third child, his two sons-in-law and his daughter-in-law. Obviously, these persons were objects of his concern. The testator knew the magnitude of his estate and undoubtedly was aware that if his particular legatees were required to pay the taxes normally devolving upon them by apportionment and by reason of the state's exaction of inheritance taxes, the legacies would be greatly diminished. It is apparent that *317 the testator's design was to protect these and the other particular legatees from such result. For instance, we do not think he had any idea, in view of his direction to pay the taxes out of the general fund along with the debts, that his wife was to pay an apportioned amount of the taxes. We think this would be particularly true, too, with respect to the domestic servant who was bequeathed $3,000.00 "in recognition of his devoted service over a long period of years." We are sure the testator must have been desirous of shielding this legatee from burdensome taxation on the small legacy.
There are many cases from other jurisdictions which are worthy of mention here, some of which are, to-wit:
In Re Sykes' Will, supra, the second article of the will stated that "one-half of my net estate after the deduction of debts, funeral and administration expenses and any estate tax" is disposed of by giving the testator's widow $2,500.00 outright and the balance in trust to pay the income to the wife for life and the principal on her death to charities. By the third article the testator gave several gifts "from the other one-half of my net estate after the deduction of debts, funeral and administrative expenses and any estate tax." The court held that by the grouping of the deductions, including "any estate tax" in computing the halves of the net estate the testator clearly directed that the estate taxes with respect to the testamentary estate be paid out of the "general estate" without statutory apportionment, so that the estate taxes with respect to the legacy and life interest given to the wife were payable out of the general estate.
In re James' Estate, supra, the court said:
"The grouping of the estate taxes with debts and administration expenses, which are ordinarily payable out of the general estate, is significant of the purpose of the testatrix to charge the taxes similarly."
Another New York case is In Re Leonard's Estate, 9 A.D.2d 1, 189 N.Y.S.2d 422. The will said:
"* * * The clause construed by the Surrogate provides: First, I direct my executors hereinafter named to pay all my just debts, funeral and administrative expenses, including such estate and inheritance (sic) taxes as may be assessed against my estate.
* * * * * *
"The Surrogate correctly held that testator had directed payment from his estate, without apportionment, of taxes upon the property which passed under his will. `The grouping of the estate taxes with debts and administrative expenses, which are ordinarily payable out of the general estate, is significant of the purpose of the (testator) to charge the taxes similarly.' Matter of James' Estate, * * * 40 N.Y.S.2d 4, * * *."
In Re Wolinsky's Estate, Sur., 73 N.Y.S. 2d 757, the will provided:
"In the event that, after the payment of all of the foregoing bequests and payment of all proper taxes, administration expenses and other charges against my estate any balance thereof shall remain, I then give and bequest the following sums to the following designated institutions: * * *."
The final dispositive paragraph of the will bequests the residuary estate to the widow and the two children. The court held that the testator clearly expressed his purposes to the effect that the taxes were to be charged against the residuary estate.
In Re Randell's Estate, 147 Misc. 358, 263 N.Y.S. 778, the court said:
"The language of clause sixth of the will, dealing as it does in the same sentence with expenses of administration and taxes, gives further support to the thought that legacies to the general legatees are payable without deduction.

*318 All doubt on the subject, however, is removed by a consideration of the fact that in clause sixth the gift to the residuary legatee is only of so much of the estate as remains after payment of the legacies, the expenses of administration, `and the taxes."
In Re McGee's Will, Sur., 73 N.Y.S.2d 190, the court said:
"The will directs that all inheritance taxes, estate taxes and other similar taxes, both State and Federal, be paid from the residuary estate. The testator, by clear, definite and unmistakable terms, has stated the source of payment of all estate taxes. The rule of apportionment provided for by Section 124 of the Decedent Estate Law must be followed except in the case where a testator `otherwise directs in his will * * *'. The direction that all estate taxes shall be payable from the residuary estate is a clear mandate that there shall be no apportionment of said taxes."
And it was said in Morris v. Dosch (1937) 194 Ark. 153, 106 S.W.2d 159, that a provision that "[a]fter all expenses, burial, inheritance tax, etc., are paid," the balance of the estate was to be distributed in a certain manner clearly manifested an intention that the inheritance taxes should be paid out of the corpus of the estate.
In Speakman's Estate, 20 Pa.Dist. & Co.R.2d 587 (1959), it was said by the court:
"Secondly, it is of the utmost significance that the testator has grouped the payment of taxes with the payment of debts and funeral expenses. Where there is a general direction to the executor to pay all debts, expenses of administration and taxes there is an implied direction that taxes are to be paid from the fund which bears the burden of the debts and expenses.
"Obviously he knew the debts would be paid from the residue. Similarly he must have intended the taxes occasioned by his death to be paid from the same fund bearing the death and funeral expenses. This is the only interpretation which renders the first item operative.
"Here is a direct mandate to pay taxes grouped in the same breath with an order to pay debts and funeral expenses."
For the above and foregoing reasons, the judgment appealed from is affirmed.
Affirmed.