OPINION OF THE COURT
Michael H. Feinberg, S.
*518 In this miscellaneous proceeding for the enforcement of a claim against the decedent’s estate, the parties agreed to consolidate and resolve all issues by motion for summary judgment instituted by the decedent’s daughter on June 19, 1996. Upon a review of the papers submitted in support of and in opposition to the motion, it is hereby granted.
Factual and Procedural Background
The decedent Rubin Lubins (hereafter the decedent) and his wife, Bertha Lubins (hereafter Bertha), executed a joint and mutual will on February 5, 1985 (hereafter joint will). Bertha died on May 30, 1986, and on October 23, 1986 this court admitted the joint will to probate as her last will and testament. The decedent qualified as Bertha’s executor under the joint will and took her estate in accordance with its terms.
Notwithstanding the foregoing events, the decedent executed a new will on March 10, 1987 (the March 10 will) revoking all wills and codicils previously made by him. In the March 10 will, the decedent acknowledged the existence of his son Melvin Lubins (hereafter the petitioner or Melvin), and then effectively disinherited him by leaving his entire residuary estate, including the portion he had inherited from Bertha, to his daughter Mae (more frequently spelled and hereafter May) Bashin.
Subsequently, by instrument dated June 22, 1987, the decedent established an inter vivos trust naming himself and May as cotrustees. The trust was revocable and amendable by the decedent, but not by May or anyone else. By instrument dated June 23, 1987, the decedent amended the trust. (The two instruments are referred to collectively hereafter as the trust.) By the terms of the trust, income was payable to the decedent for his lifetime. Upon his death, the trust terminated; $20,000 of trust principal was payable to each of seven named grandchildren of the decedent, with the balance payable to May. On the same date that he established the trust, the decedent executed his final will (the June 22 will). The June 22 will revoked all prior wills made by the decedent and effectively poured his entire estate into the trust. On or about June 25, 1987, the decedent actually transferred most of his assets, including several parcels of real property located in Brooklyn, into the trust.
The decedent died on November 5, 1993. Soon thereafter, May transferred many of the aforementioned parcels of real property to herself in accordance with the terms of the trust. *519 On or about September 22, 1994, May applied under SCPA article 13 to qualify as voluntary administratrix of the decedent’s estate. Her affidavit supporting the application showed only $9,700 in the estate, consisting entirely of securities. On September 15, 1995, Melvin filed a notice of claim pursuant to SCPA 1803 to enforce his rights under the 1985 joint will for one half of the value of the combined estates. By notice dated October 27, 1995, May rejected Melvin’s claim.
On or about December 28,1995, Melvin commenced the present proceeding for enforcement of his claim. His petition was supported by the following reasons: "Par. 11: The joint will signed by the decedent and Bertha constitutes a binding and irrevocable contract under which petitioner is entitled to one-half of the decedent’s and Bertha’s combined estates, including assets transferred to the trust or otherwise disposed of for less than full value in money or money’s worth following Bertha’s death. The decedent’s inter vivos and testamentary dispositions of his property following Bertha’s death were contrary to the terms of the joint will and breached the decedent’s contractual commitment. Upon information and belief, Petitioner’s one-half of the decedent’s and Bertha’s combined estates amounts to approximately $1,500,000.”
May’s answer generally denied the allegations of the petition and asserted four affirmative defenses, two of which are particularly relevant to a determination of the issues. First, the joint will contained no express statement that the instrument was intended to constitute a contract between the parties, as required by EPTL 13-2.1 (b) for wills executed after August 31, 1983. Thus, there was no enforceable contract to maintain the legacies and dispositions in the said will or not to revoke it. Second, paragraph third of the joint will vested all of Bertha’s property "absolutely” and without limitation in the decedent, and he thus acquired the unfettered right to dispose of the property as he saw fit and to create a new will.
On or about May 21, 1996, Melvin moved by order to show cause for a preliminary injunction and a temporary restraining order (TRO) to prevent the further distribution of estate property by May. He maintained that such measures were necessary to protect him from the irreparable harm/loss of the possession and use of real property, that he was likely to succeed on the merits of his claim, and that the balance of equities was in his favor, the three criteria necessary for the granting of such relief. In opposing the motion, May reiterated the affirmative defenses of her answer and noted further that the *520 joint will made no provision for the disposition of the residuary estate by the survivor. She concluded that Melvin had little chance of success on the merits and that the motion should therefore be denied in its entirety. The parties subsequently agreed to consolidate and resolve all issues by motion for summary judgment instituted by May on June 19, 1996. On July 26, 1996, Melvin cross-moved for an order granting him summary judgment striking May’s answer and all affirmative defenses asserted therein.
Legal Analysis
The resolution of the motion and the cross motion for summary judgment depends upon whether the decedent and Bertha, in executing their joint will in 1985, employed the requisite explicit contractual language that prohibited the survivor of them from revoking the joint will and/or creating a new will with different dispositive provisions. In other words, did the testators fulfill the Statute of Frauds requirement of a writing (EPTL 13-2.1 [b]), and thus bind themselves not to revoke or alter their joint will?
A will is an ambulatory instrument revocable by the testator up until the moment of death (EPTL 1-2.19 [a]; Blackmon v Battcock, 78 NY2d 735, 739; Tutunjian v Vetzigian, 299 NY 315, 319). Even after due execution of a will, testators retain unfettered authority to dispose of all property during their lifetimes (see, e.g., Matter of Fabbri, 2 NY2d 236, 239). Policy considerations favor the ambulatory nature of wills because of the freedom it affords testators to dispose of their property as they wish, during life as well as at death. The finding of a contractual obligation not to revoke or alter a will has never been a casual matter because of the strictures it places on this freedom (see, e.g., Glass v Battista, 43 NY2d 620, 624; Matter of Mangiacavallo, 173 AD2d 471, 472). Accordingly, the rule at common law required that evidence to show a contract by a decedent, to dispose of his/her property in a certain manner after death, had to be clear and convincing or it was insufficient (see, e.g., Oursler v Armstrong, 10 NY2d 385, 389, 392; see also, Rubenstein v Mueller, 19 NY2d 228, 232; Wallace v Wallace, 216 NY 28, 39; Edson v Parsons, 155 NY 555). The recent case of Radici v Piana (NYLJ, Mar. 5, 1996, at 26, cols 2, 3), in which the court stated that the law "strictly scrutinizes the renunciation of a testator’s right to revoke a will * * * and will decline to find mutual [joint] wills contractually binding when the intent to revoke is left to conjecture”, is in accord.
*521 Over the years the common-law clear and convincing standard of proof was progressively eroded by the courts. For example, at one time the mere use of plural pronouns ("we”, "our”, "us”) instead of singular ones ("I”, "my”, "me”), when supported by consistent extrinsic evidence, was sufficient to hold that a joint will evinced "the joint disposition of the collective property of both” and was thus contractually binding (see, e.g., Rubenstein v Mueller, 19 NY2d 228, supra; Rich v Mottek, 11 NY2d 90; Tutunjian v Vetzigian, 299 NY 315, supra; Rastetter v Hoenninger, 214 NY 66). This trend culminated in 1978 with Glass v Battista (43 NY2d 620, supra) where the Court of Appeals placed sole reliance on inferences supplied by the joint will itself, specifically the evidence of the mutual dependence of the dispositions supplied by the testators’ use of plural pronouns along with the "natural inference” of contractual intent flowing from the relationship between the testators and the third-party beneficiaries / remaindermen (the testators’ children), in holding that the estate of the surviving party was subject to the claim of the remaindermen.
Ironically, however, while engaged in diluting the clear and convincing standard of proof, the Glass v Battista Court added that "using other less ambiguous methods of executing a contract will obviate the need for surmise as to the parties’ intent” (Glass v Battista, supra, at 625). With this statement, the Court impliedly recognized the desirability of a more certain means of attributing intent to testators. The Law Revision Commission had already begun to recommend the enactment of a statute to ensure stricter proof requirements for the finding of a contractual will a year earlier (see, Mem of Law Rev Commn. 1977 NY Legis Doc No. 65 [K-l], at 2248).
The Legislature subsequently amended the relevant statute, EPTL 13-2.1, by adding subdivision (b) which provides as follows: "(b) A contract to make a joint will, or not to revoke a joint will, if executed after the effective date of this paragraph can be established only by an express statement in the will that the instrument is a joint will and that the provisions thereof are intended to constitute a contract between the parties” (EPTL 13-2.1 [b], as added by L 1983, ch 292, § 1, eff Sept. 1, 1983). By permitting a contract to be established only by an express statement in the joint will itself that it was intended to be contractual, the amendment creates a simple and quick means of distinguishing between contractually binding joint wills and those that are not. Upon careful analysis, it may be concluded that the language of the Lubins joint will *522 failed to establish the requisite contract between the parties binding the survivor to its dispositive provisions.
The petitioner relies on only one postamendment case, and thus essentially only one relevant case, in support of his claim: Matter of Schuman (NYLJ, Oct. 15, 1992, at 29, col 3 [Sur Ct, Nassau County, Radigan, S.]). A comparison of the preambles (exordium clauses) to the Schuman and the Lubins joint wills, among other things, demonstrates that that reliance is misplaced. The Schuman preamble stated in pertinent part as follows: "[We, David Schuman and Harriet E. Schuman, husband and wife * * * each] 'mutually, in consideration of the other making his or her will, and of the provisions made herein in each other’s behalf, make this our Last Will and Testament and agree that the same cannot be changed or varied by either without the consent in writing of the other’ ” (supra [emphasis added]). Commenting on the preamble, the Schuman court said that it was "satisfied that the introductory paragraph of the will * * * clearly expresses the contractual intent of the parties and their desire to enter into a joint will” (at 29, col 5). Moreover, the court was satisfied from a reading of the entire will that it represented a "clear and unambiguous expression of the contract under which the issue of the parties were to succeed to the survivor’s estate” (supra).
This court agrees that the final clause of the Schuman preamble unequivocally indicated the parties’ contractual intent not to alter (revoke) the dispositive provisions of their joint will without the written consent of the other. By contrast, the Lubins preamble indicated merely that the parties, for valuable considerations, "agreed” and "promise[d]” to make a joint will "giving to the survivor of us all property, both real and personal”: "We, rubín lubins and bertha lubins, his wife * * * having heretofore agreed, for valuable considerations, hereby mutually acknowledged, to make joint and mutual wills giving to the survivor of us all property, both real and personal * * * in further consideration of our mutual promises to make such joint and mutual will, do hereby make, publish and declare this, and this only, to be our Last Will and Testament.”
Significantly, the Lubins preamble did not contain an unambiguous statement of intent by the parties not to "change” or "vary” their testamentary scheme without the other’s written consent, as the Schuman preamble did. That distinction makes all the difference. As stated previously, the promise to refrain from altering an existing will must satisfy the Statute of Frauds and be reduced to writing. The mere ex *523 ecution of joint wills, as here, is not sufficient to satisfy the statute (see, e.g., Radici v Piana, NYLJ, Mar. 5, 1996, at 26, col 2, supra; Margulis v Teichman, 125 Misc 2d 729; Matter of Thoens, 88 Misc 2d 1006, 1008, affd 41 NY2d 823).
In addition to the distinctive preambles, the substantive provisions of the two wills further distinguish them. The Schuman will passed the estate of the first to die to the survivor (fflf III, VIII), and upon the death of the survivor to the parties’ three children equally (¶¶ IV, IX):
"III (VIII). All the rest, residue and remainder of my estate, real, personal and mixed * * * I give, devise and bequeath unto my beloved wife, Harriet e. schuman [husband, david schuman], to have and to hold forever.
"IV (IX). In the event, however that my wife, Harriet e. schuman [husband, david schuman], predecease me, or in the event that my wife and myself die in such circumstances that it would be impossible to determine which of us died prior to the other, I herein give, devise and bequeath all the rest, residue and remainder of my estate * * * to my children * * * to be shared equally, per stirpes and not per capita” (emphasis added).
Because the Schuman court was convinced that the parties had jointly contracted to have the survivor pass their (combined) estates to their issue (Matter of Schuman, supra), it held that the survivor was restricted from making inter vivos gifts which would defeat that testamentary plan. The court found this restriction on inter vivos transfers notwithstanding the fact that the residuary testamentary provision for the survivor (¶¶ III, VIII) contained no express words of limitation and was described " 'to have and to hold forever’ ” (at 29, col 5). The court explained that because the will imported the joint disposition of the collective property of both parties, the use of the language " 'to have and to hold forever’ ” could not alter the prohibition against the survivor disposing of his/her estate contrary to the joint testamentary plan (supra).
By contrast, absent the required explicit language of contract not to alter the joint testamentary scheme in either the Lubins preamble or any other paragraph of the Lubins will (cf., Margulis v Teichman, 125 Misc 2d 729, supra), the fact that in paragraph third the parties bequeathed the entire estate "absolutely” to the survivor of the first to die is significant: "Par. third: We mutually and respectively give, devise and bequeath to whichever of us shall survive the other, absolutely all the rest, residue and remainder of our property * * * of *524 which we may be respectively entitled at the death of the first of us to die” (emphasis added).
Both pre- and postamendment cases support the principle that where a husband and a wife, by the terms of a joint or mutual will, each individually devises his/her property to the other "absolutely”, the gift cannot be qualified or cut down unless, unlike here, there is an equally clear (contractual) intent to so qualify the gift by the provisions of the same will (see, e.g., Matter of Mangiacavallo, 173 AD2d 471, 472, supra; Matter of Zeh, 24 AD2d 983, affd 18 NY2d 900; Matter of Wierzbieniec, 93 AD2d 978; Matter of Bainer, 71 AD2d 728). Accordingly, there was no impediment to the decedent’s revocation of his and Bertha’s joint will and the execution of a new will with different dispositive provisions that effectively disinherited Melvin and left the entire residuary estate to May (see, e.g., Matter of Mangiacavallo, 173 AD2d, at 472, supra).
The petitioner’s final relevant argument is that when the Lubins joint will is construed in its entirety, as is required (see, e.g., Matter of Fabbri, 2 NY2d 236, 240, supra; Matter of Miner, 146 NY 121, 130-131; Matter of Birdsell, 271 App Div 90, 93), paragraph fifth constitutes a residuary provision intended to bind the survivor to bequeath the parties’ combined estates equally to May and Melvin upon the survivor’s death. "Par. fifth: We give, devise and bequeath all the rest, residue and remainder of our property * * * to our daughter mae bashin and our son, melvin lubins, in equal shares.”
May counters that a reading of the will as a whole shows that the parties provided for (1) the disposition of the residuary estate to the survivor of the first to die fl] third), or in the event of simultaneous deaths, (2) the disposition of specifically described (by address) parcels of real property to May and Melvin and certain personal property (sums of money) to various relatives, etc. fl] fourth), and the residuary, in the case of simultaneous death only, to May and Melvin equally fll fifth). May emphasizes that the will contained no disposition of the residuary estate by the survivor, as the Schuman will did ("In the event * * * that my wife/husband predecease me * * * I herein give * * * the residue * * * to my children” [Schuman will ¶¶, IX]).
An independent reading of the will persuades this court that May’s argument is the more cogent one. Paragraphs fourth and fifth, pertaining to the circumstance of simultaneous deaths, must be read together. Paragraph third alone constitutes the residuary paragraph that leaves the entire estate to *525 the survivor "absolutely”. Paragraph fifth is not a second residuary paragraph applicable in all circumstances; its provisions are merely complementary to paragraph fourth and are to take effect only in the event of the parties’ simultaneous deaths. In Matter of Rutherford (125 AD2d 312 [1986]), the husband and wife executed a joint will which, as here, lacked a provision governing the disposition of the estate of the survivor if death were not simultaneous. Like the Rutherford Court, this court declines to rewrite the will " 'in order to give effect to an intention which possibly the testator may have had but which is not revealed by the language used in the will’ ” (supra, at 313; see also, Matter of Nelson, 268 NY 255, 258; Matter of Kronen, 114 AD2d 1033, affd 67 NY2d 587).
In sum, this court concludes from a comparison of the Schuman and the Lubins joint wills that the latter lacked the requisite contractual language binding the survivor to its terms. Moreover, the Schuman joint will provided for one party surviving the other, for simultaneous deaths and for disposition of the residuary estate by the survivor, whereas the Lu-bins joint will provided only for one party surviving the other and for simultaneous deaths, but not for disposition of the residuary by the survivor. Accordingly, May’s motion for summary judgment is granted, and Melvin’s cross motion is denied. Under the circumstances, there is no need for this court to address the other, merely tangential and/or moot issues raised by the parties.
[Portions of opinion omitted for purposes of publication.]