[800 NYS2d 715]

RHONDA SCHLOSS, Appellant, v ALBERT B. KOSLOW, Respondent.

Second Department, July 11, 2005

APPEARANCES OF COUNSEL

*Greene & Zinner, P.C.*, White Plains (*Stanley S. Zinner* and *S. Dean Kim* of counsel), for appellant.

*Michael F. Grossman, P.C.*, New York City (*Michael F. Grossman* and *Doron Zanani* of counsel), for respondent.

### OPINION OF THE COURT

PRUDENTI, P.J.

The essential question presented on this appeal is whether the mutual wills of Sophie F. Koslow, now deceased, and of her husband, the defendant, Albert B. Koslow, contained provisions that would now entitle the plaintiff, Rhonda Schloss, to a constructive trust and judgment directing the defendant to transfer approximately 50% of his assets to her. We hold that the plaintiff is not entitled to this relief, or to any other form of relief requested in the complaint.

The plaintiff alleges that the defendant, her uncle by marriage, violated a covenant that he had made with Sophie F. Koslow, the plaintiff's aunt, who died in 2001. The plaintiff alleges, among other things, that the defendant promised that he would never revoke the provisions of a will that he executed in 1997. The plaintiff further alleges that in June 2002 the defendant reneged on that promise, and "informed [her] that he had revoked his [1997] Will . . . [and] that [a] New Will provides that all the Assets [would] be distributed to his Daughter and granddaughters, except for the New York City cooperative apartment which is to be distributed to Plaintiff." The plaintiff asserts that, in light of the terms of the defendant's 1997 will, she is entitled to a constructive trust and judgment directing the defendant "to convey [approximately 50% of his] assets to the plaintiff."

As alleged in the complaint, the last will and testament of Sophie F. Koslow included the following provision:

"My intention in making this Will is to insure that . . . the total *assets accumulated by me and my beloved husband,* ALBERT, during our life together shall be used for the maintenance, care and nurture of the survivor of the two of us during his or my lifetime, and that when the survivor of us has died,

the total estate left by both of us, less the cost of maintenance, care and nurture of the survivor of us, shall be shared equally between my husband's daughter, DONNA CASALINO, and my niece, RHONDA FALK [the plaintiff Rhonda Schloss], and that if either of them has predeceased both of us, then to their issue *per stirpes*. My husband has further agreed that his Will shall make a similar disposition." (Emphasis added.)

The defendant acknowledges that on June 25, 1997, he also signed a will. The defendant's 1997 will was, in relevant part, essentially a "mirror image" of Mrs. Koslow's, and contained a clause that paralleled the one quoted above, that is, a provision that stated:

"My intention in making this Will is to insure . . . that the total assets accumulated by me and my beloved wife . . . during our life together shall be used for the maintenance, care and nurture of the survivor of the two of us during her or my lifetime, and that when the survivor of us has died, the total estate left by both of us, less the cost of maintenance, care and nurture of the survivor of us, shall be shared equally between my daughter, DONNA CASALINO, and my niece, RHONDA FALK [the plaintiff Rhonda Schloss], and that if either of them has predeceased both of us, then to their issue *per stirpes*. My wife has further agreed that her Will shall make a similar disposition."

The essential question presented on this appeal is whether Sophie F. Koslow's execution of her will, which included the provision quoted above, and the contemporaneous execution by the defendant of his 1997 will, which contained the essentially identical provision quoted above, gave rise to a binding contract that the plaintiff, as an intended third-party beneficiary, is entitled to enforce. A related question is whether, even assuming that she has no right of action in contract, the plaintiff may nonetheless seek relief, including a money judgment against the defendant, on an alternate theory of constructive trust.

In support of his motion for summary judgment, the defendant relied, in part, on the terms of EPTL 13-2.1 (b). This statute, as amended in 1983 (L 1983, ch 292), states:

"*A contract* to make a joint will, or *not to revoke a joint will,* if executed after the effective date of this

paragraph *can be established only by an express statement in the will* that the instrument is a joint will and *that the provisions thereof are intended to constitute a contract between the parties.*" (EPTL 13-2.1 [b] [emphasis added].)

The plaintiff correctly argues that the two wills executed in 1997 by the defendant and by his deceased wife would more accurately be defined as two "mutual wills" rather than as a single "joint will." "A joint will is a single testamentary instrument, which contains the wills of two or more persons, is executed jointly by them, and disposes of property owned jointly, in common, or in severalty by them" (*Matter of Brown*, 26 Misc 2d 1011, 1019, citing 57 Am Jur, Wills § 681; *see* 2-41 Warren's Heaton, Surrogates' Courts § 41.13 [8] [a] [2005]). By contrast, "[m]utual wills" are "separate instruments, usually executed at the same time and making similar provisions" (2-41 Warren's Heaton, Surrogates' Courts § 41.13 [8] [b] [2005]).

We agree with the plaintiff that EPTL 13-2.1 (b), by its plain terms, applies only to joint wills, and does not apply to mutual wills (*see Matter of Thomas & Agnes Carvel Found.*, 2002 NY Slip Op 50733[U] [Sur Ct, Westchester County 2002]). Joint wills are, of course, characterized by the frequent occurrence of the plural form of the various pronouns that are used to refer back to the two joint testators or their property ("we" instead of "I," "our" or "ours" instead of "my" or "mine"). The use of these plural pronouns, the hallmark of a joint will, had, in fact, been regarded as a form of proof that the testators intended to bind themselves contractually never to change their testamentary dispositions (*e.g. Glass v Battista*, 43 NY2d 620 [1978]; *Rubenstein v Mueller*, 19 NY2d 228 [1967]; *Rich v Mottek*, 11 NY2d 90 [1962]; *Tutunjian v Vetzigian*, 299 NY 315 [1949]; *Rastetter v Hoenninger*, 214 NY 66 [1915]). In our view, the enactment of EPTL 13-2.1 (b) was meant to counteract what was seen as undue reliance on the rule according to which the mere use of plural pronouns in a joint will could be construed as proof of a contractual agreement never to change or alter a testamentary disposition (*see Matter of Lubins*, 172 Misc 2d 517 [1997], *affd* 250 AD2d 850 [1998]).

The plaintiff suggests that since the Koslows' 1997 wills were mutual wills and since EPTL 13-2.1 (b) does not apply, her burden of proving that the defendant made a valid contract never to revoke or alter his will is consequently less exacting than if the statute did apply. This argument hinges on the

premise that, at common law, the circumstances surrounding the execution of two mutual wills were just as likely as the circumstances surrounding the execution of a single joint will to permit the inference that the two testators had made reciprocal promises never to revoke or alter their respective wills. However, we do not believe that this premise is correct. On the contrary, a binding promise never to revoke or alter a testamentary disposition was, at common law, less readily implied in the case of two mutual wills than in the case of a single joint will (*see Glass v Battista, supra* at 623-624; *Oursler v Armstrong,* 10 NY2d 385, 389 [1961]; *Matter of Thompson,* 309 AD2d 1013 [2003]).

In *Glass v Battista* (*supra* at 624), the Court of Appeals explained, "where [as in *Oursler v Armstrong*] a husband and wife executed mutual wills, rather than joint wills, which lacked contractual language, no contract was found." This statement reflects a clear distinction between mutual wills, on the one hand, and joint wills, on the other, and suggests that the distinction was a substantive one. This statement reflects that, at common law, some "contractual language" was needed in the case of mutual wills, although not in the case of joint wills, in order to justify the inference that the testators had made binding promises never to revoke or alter their wills. The enactment of EPTL 13-2.1 (b) thus had the effect of making the presence of "contractual language" every bit as crucial in the case of joint wills as in the case of mutual wills. The enactment of EPTL 13-2.1 (b) has, in other words, altered the state of the law in such a way as to eliminate, rather than in such a way as to enhance, the distinction between joint wills, on the one hand, and mutual wills, on the other hand, for the purposes of determining whether a particular testator validly promised never to revoke or alter his or her will.

The defendant's alleged promise to renounce his right of testamentation in this case was never "clearly and unambiguously delineated" (*Matter of Urdang,* 304 AD2d 586, 588 [2003]). The mutual wills under review in this case contain no express "contractual language" (*Glass v Battista, supra* at 624), just as they contain no "express statement . . . that the provisions thereof are intended to constitute a contract between the parties" (EPTL 13-2.1 [b]). The requirement that there be such "contractual language," made applicable to cases involving joint wills as a result of the enactment of EPTL 13-2.1 (b), already existed at common law in connection with cases involving mutual wills (*Glass v Battista, supra* at 624).

Because we conclude that, under the common law of New York, the mutual wills in this case do not furnish a sufficient basis upon which to infer a promise by the defendant never to alter or to revoke his will, we need not address whether, as the plaintiff argues, EPTL 13-2.1 (b) is inapplicable to causes of action based on a theory of constructive trust, as opposed to contract (*see Matter of Schorr,* NYLJ, Jan. 24, 2003, at 19, col 2 [Sur Ct, NY County]; *Matter of Blake,* NYLJ, Mar. 7, 2000, at 27, col 3 [Sur Ct, NY County]; *Matter of Pascale,* NYLJ, May 16, 1997, at 27, col 2 [Sur Ct, Bronx County]).

In light of our determination outlined above, we similarly need not address whether, pursuant to the rule announced in the more recent Court of Appeals decision in *Blackmon v Estate of Battcock* (78 NY2d 735 [1991]), the defendant would be free to make inter vivos gifts even in the event that he were to be found to have made a binding promise never to alter the terms of his will. Here, because we find insufficient evidence to support the conclusion that the defendant validly promised never to alter or revoke his will, he is free to dispose of his assets as he sees fit.

Additionally, the Supreme Court properly denied the appellant's motion to compel discovery as academic.

For the foregoing reasons, the order is affirmed, with costs.

H. MILLER, J., SPOLZINO and LIFSON, JJ., concur.

Ordered that the order is affirmed, with costs.