300 So.2d 614 (1974)
Succession of Miss Clara M. BRIGHT.
No. 5801.
Court of Appeal of Louisiana, Fourth Circuit.
September 3, 1974.
Rehearing Denied October 9, 1974.
Writ Granted December 13, 1974.
*615 Henican, James & Cleveland, New Orleans (Joseph V. Bologna and Helene McG. Walker, New Orleans), for The Diocese of the Protestant Episcopal Church in Louisiana, appellant.
J. Charles Collins, Jr., New Orleans, for Russell L. Parpal, appellee.
*616 Legier, McEnery, Waguespack, Kuhner & Scoggin, New Orleans (Guy B. Scoggin, New Orleans), for Marguerite Dow, widow of Harry McEnerny, Jr., appellant-appellee.
Before LEMMON, J., and FLEMING and WICKER, JJ. Pro Tem.
LEMMON, Judge.
The Diocese of the Protestant Episcopal Church in Louisiana has appealed from a judgment which dismissed its opposition to the executrix's final account in this succession proceeding. As a residuary legatee, the Diocese had contested the allocation in the account of charges for inheritance and estate taxes.
In her original will Miss Clara M. Bright provided for several particular legacies of cash and named the Diocese as the sole residuary legatee. Some of the cash legacies were to tax-exempt charitable organizations, while others were to non-exempt individuals (including Russell Parpal). The will further provided:
"I desire all of my debts and the administration costs and any and all Estate and/or Inheritance Taxes to be paid out of the assets constituting my Estate, and no part thereof is to be charged to any of the particular legatees above mentioned."
Miss Bright thereafter wrote four codicils to her will. In the first two codicils she gave Parpal the right to purchase the immovable property at 1125 Race Street and made certain provisions relative to this right.
In the third codicil she donated one-half of the residue of her estate to Parpal, expressly stating that "(i)n all other matters, my original will and codicils are to remain as written."
In the fourth and final codicil Miss Bright revoked previous provisions as to 1125 Race Street and gave the property and contents to Parpal. This codicil contained no reference as to other provisions of the original will or previous codicils.
The administratrix interpreted the above quoted testamentary language as a direction against apportionment of taxes and proposed to pay all estate and inheritance taxes, both on the particular legacies and on the taxable portion of the residuary estate, from the residue and then to divide the remainder between the co-residuary legatees. The Diocese opposed (1) charging the residuary estate with taxes on the particular legacy of 1125 Race Street and (2) charging the Diocese with any portion of the taxes on the residue.
Taxes on the legacy of 1125 Race Street
The Diocese argues that Miss Bright's will specified that taxes not be charged to the legatees therein named, but her codicil did not specifically exempt the additional particular legacy from taxes.
Generally, taxes are apportioned among persons interested in the estate according to the value of their respective interests, unless the testatrix directs to the contrary. R.S. 9:2431-9:2438. The testatrix's intention to free a legacy from apportionment must be clear and unambiguous, since the result is to increase the legacy in question and to shift the burden of taxes elsewhere.
In the testamentary provision previously quoted Miss Bright expressly stated her intention that all estate and inheritance taxes be paid out of her estate rather than by the persons to whom she donated particular legacies. She further evinced her intention that taxes be paid in the same manner as debts and administrative costs, that is, out of the residuary estate.
In Succession of Jones, 172 So.2d 312 (La.App. 4th Cir. 1965), the testator made certain particular legacies, created a foundation with a fractional portion of his "net estate after the payment of all debts, Federal Estate taxes and Louisiana Inheritance taxes, and after payment of the special *617 bequests made by me", and then left the remainder of his property in trust to his children. The court interpreted the quoted language as constituting direction against apportionment and as indicating the testator's intention that taxes on the particular legacy in question be paid out of the residuary estate.
In the present case the direction against apportionment in the original will was clear and unambiguous, and the Diocese concedes that the taxes on the particular legacies in the original will must be paid out of the residuary estate.
The unconflicting provisions of the original will also apply to dispositions made by codicil. We find no basis on which to conclude Miss Bright intended that the subsequent particular legacy not be subject to the provisions of the original will. On the contrary, we find that the will and codicils, taken as a whole, reflect her intention that the tax burden on all particular legacies be changed and shifted to the residuary estate.
Taxes on legacy of the residuary estate
Parpal contends that the Jones case also controls a determination of the allocation of taxes within the residue itself. On this specific issue, we distinguish the Jones case, which involved a contest between a particular legatee and a residuary legatee, while the present case involves a contest between co-residuary legatees.
An additional distinguishing factor in the present case is that one of the co-residuary legatees enjoys tax-exempt status, while the other does not. Therefore, unless the testatrix directed against apportionment within the residue itself, the taxes on the taxable portion of the residue would be charged against Parpal, in accordance with the value of his interest (100%) in the taxable portion.
The determinative question is whether Miss Bright intended equality of division of the residue to be net equality (equal division of the amount remaining after the tax impact on the residue), rather than gross equality (equal division prior to taxes). Apportionment is the general rule. In order to accomplish net equality, the testatrix must clearly direct against apportionment of taxes within the residue.
At the time the will was confected, the testatrix named one residuary legatee, and she could not have then intended to direct against apportionment between two co-residuary legatees.
When the testatrix in her third codicil donated one-half of the residue to Parpal, she incorporated by reference the remainder of the original will. However, even if in the codicil she had restated the pertinent will provision in its entirety, such a general direction for payment of all taxes from the residue is not the equivalent of a direction against apportionment within the residue itself. The general direction in this case simply constituted an instruction to pay taxes on the particular legacies out of the residue and was intended to accomplish a net donation of the particular legacies. Since the testatrix did not expressly direct against apportionment within the residue, the residue must be equally divided before imposition of taxes on the residue. We decline to presume that the testatrix intended net equality, after the tax impact. See In re Shubert's Will, 10 N.Y.2d 461, 225 N.Y.S.2d 13, 180 N.E.2d 410 (1962).
Furthermore, we do not interpret the general direction as a command that taxes be treated, as between residuary legatees, the same as debts and administration expenses. Debts must be paid and administration expenses incurred in order to determine what constitutes the residuary estate. Thus, each residuary legatee should properly bear half of the expenses of administration. Succession of Peters, 192 La. 744, 189 So. 122 (1939). But after the debts, administrative expenses and particular legacies have been paid (including taxes on these legacies), each of the two residuary legatees receives his half of the *618 residue and pays his taxes on that share, unless the testatrix clearly expressed a contrary intention.
Parpal argues that the Diocese enjoyed the benefit of the tax exemption, inasmuch as the taxing authority had considered the exemption in calculating the taxes due. In the absence of a contrary provision in the will, the tax exemption should be considered, not only by the taxing authority in determining the amount of taxes due, but also by the executrix in allocating the taxes on the residue between the co-residuary legatees. Otherwise, a nonexempt legatee receives a benefit from the exemption when no benefit is due, and an exempt legatee receives only a portion of the benefit when the entire exemption is due.
We therefore conclude each co-residuary legatee should bear the tax charges on his half of the amount of the residue prior to taxes.
Finally, we reject Parpal's argument that the judgment of possession was res judicata and therefore dispositive of the issue before us. The executrix must pay the taxes and then charge these back against the co-residuary legatees in making the final account. The Diocese did not contest the payment of taxes as calculated by the executrix, and therefore signed the petition for possession; the Diocese does contest the executrix's allocation of charges for these taxes as proposed in the final account. Res judicata is clearly inapplicable.
The executrix also appealed on an accounting issue. However, all parties agreed in this court that the revision of the final account, ordered by the trial judge, is unnecessary, inasmuch as the sums received by the executrix since the previous account have properly been accounted for.
Accordingly, the judgment of the trial court is reversed in part, and it is now ordered that the opposition be maintained in part and the executrix be ordered to revise the final account so as to charge Russell Parpal with all of the estate and inheritance taxes on the taxable half of the residue. Costs of this appeal are to be equally divided between the co-residuary legatees.
Affirmed in part, reversed and rendered in part.