363 So.2d 1343 (1978)
Louis E. BULLIARD and Charles P. Bulliard, Plaintiffs and Appellants,
v.
Marcel J. BULLIARD, Sr., Testamentary Executor of the Succession of Marie Angelle Thibodeaux, Defendant and Appellee.
No. 6665.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1978.
Writ Refused December 1, 1978.
*1344 C. Cyril Broussard, New Orleans, for plaintiffs-appellants.
Wiedmann & Fransen by John A. Stassi, II, New Orleans, Paul S. Daspit, Jr., St. Martinville, for defendants-appellees.
Before CULPEPPER, DOMENGEAUX and CUTRER, JJ.
*1345 CULPEPPER, Judge.
This suit involves the interpretation of a codicil to a will which provides: "The inheritance and estate taxes due by Mr. Garland Castex and Marcel J. Bulliard are to be paid by my estate." The plaintiffs-appellants, Louis E. Bulliard and Charles P. Bulliard, are affected legatees who oppose the tableau of distribution which relieves the two legatees named in the codicil of payment of taxes. The defendant, Marcel J. Bulliard, is testamentary executor of the succession of Marie Angelle Thibodeaux. The trial court dismissed plaintiffs' opposition and ordered that the tableau of distribution be homologated. From this judgment, the plaintiffs appealed.
The plaintiffs have opposed the tableau of distribution, contending it proposes to distribute bequests to the two named special legatees, Marcel J. Bulliard and Garland Castex, free of the burden of either Federal estate or State inheritance taxes, and that it imposes the burden of those taxes on the other special legatees enumerated in the will. The plaintiffs are included among those burdened legatees. The defendant-executor maintains that his proposal for the distribution of the assets of the succession is mandated by the testator's own words in the codicil to the will.
The issues are: (1) Although LSA-R.S. 9:2432(A) provides that each heir or legatee must pay federal estate taxes in an amount in the proportion that the value of his gift bears to the total value of the estate,[1] can a testator direct against this apportionment and relieve a donation from the burden of this tax? (2) Can a testator, through a direction in the will, relieve a special legatee from the burden of Louisiana inheritance tax? (3) Does the language of this codicil direct against the apportionment of taxes among the legatees? (4) If the testator can relieve the two legatees from the burden of paying taxes on their legacies, who should bear the expense of those unpaid taxes? (5) Does St. Joseph Church, a legatee which is exempt from the payment of both Federal estate tax and Louisiana inheritance tax, share the burden of paying those taxes for the two preferred legatees?
On April 20, 1972, Marie Angelle Thibodeaux executed a will, the form of which is not contested. In it she named thirteen special legatees. The largest of these donations, consisting of land valued at $128,300 and $4,000 in cash, was made to her grandnephew and godchild, Marcel J. Bulliard. Additionally, the testatrix named Marcel J. Bulliard as executor. The second largest donation, consisting of two tracts of land valued at a total of $43,100, was made to Garland Castex, a friend of the testatrix. One cash legacy of $1,000 was made to St. Joseph Church in Parks Station, Louisiana. Among the other ten special legacies, donations of $6,000 and $5,000 were made respectively to Louis C. Bulliard and Charles P. Bulliard, the nephews of the testatrix and the plaintiffs in this suit. The testatrix donated the residuary of her estate, after the payment of debts and expenses, to Louis C. Bulliard, Charles P. Bulliard, Marcel J. Bulliard, and another nephew of the testatrix who predeceased her.
On November 3, 1972, the testatrix executed the codicil to her will. The language in controversy provides: "The inheritance and estate taxes due by Mr. Garland Castex and Marcel J. Bulliard are to be paid by my estate."
Shortly after the testatrix's death on December 7, 1976, Marcel J. Bulliard qualified and was confirmed as executor of the testament. After a court-authorized inventory had been taken, the executor filed the proposed tableau of distribution, which is the subject matter of this suit. In calculating the shares of the donees, Marcel J. Bulliard subtracted from the value of the gross estate ($268,560.76), the debts and expenses of administration and then the gross value of the legacies to himself and Garland Castex, plus the amount necessary to pay Federal estate and Louisiana inheritance taxes on *1346 those bequests. These deductions from the gross estate left a net of $19,763 to be distributed among eleven legacies totaling $32,500. The tableau of distribution proposes to divide this remaining $19,763 among the legatees in the proportion that their original legacy bore to the value of the total of the original "non-preferred" legacies. Thus, each legacy would be divided by .6080. Of course, there would be no residuary estate, and that portion of the testament bequeathing the residuum would fall.
On the other hand, if the amount of Federal estate taxes and State inheritance taxes deemed to be owed on the legacies to Castex and Marcel J. Bulliard (a total of $53,670) was not subtracted from the gross estate, there would be enough funds in the estate to fulfill completely all of the legacies in the testament. Additionally, there would be left over a residuum of $21,700. As these figures illustrate, the plaintiffs' basis for complaint is that the subtraction of the taxes on the "preferred" legacies from the gross estate deprives them of a portion of their special legacies, as well as their interests in the residuum.

I.
The first issue is whether a testator can direct against the apportionment of Federal estate taxes on each donee and thereby relieve a preferred legatee from the payment of these taxes. The Federal estate tax is a charge upon the transfer of the entire estate of the deceased. It is assessed against the total net value of the estate. The Federal law makes no provision applicable here as to the apportionment of the tax[2] (26 U.S.C.A. 2205 and 2206), and thus state law can determine where the burden of this tax shall fall.
Prior to the enactment of the Louisiana Estate Tax Apportionment Law (LSA-R.S. 9:2431, et seq.), Federal estate taxes were paid by a reduction in the residuary estate. Succession of Henderson, 211 La. 707, 30 So.2d 809 (1947). LSA-R.S. 9:2432 overrules this aspect of the Henderson case and provides the general rule that Federal estate taxes are shared by all the donees in the proportion that the value of their donation bears to the value of the net estate. However, this rule operates only to the extent that the testator has not made a contrary direction. LSA-R.S. 9:2432(A) and (C) provide:
"A. If the deceased has made no provision in his testament for the apportionment of the tax among the persons interested in the estate, the tax shall be apportioned among them by the court in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate. The values used in determining the tax shall be used for this purpose.
* * * * * *
"C. If the deceased has provided in his testament for the apportionment of the tax of some, but not of all the persons interested in the estate, the amount of the tax which has not been apportioned shall be apportioned by the court among those as to whom no provision has been made, in the same manner as is provided in Sub-section A of this Section. Added Acts 1960, No. 362, Sec. 1." (Emphasis added)
The word "tax" in the above statute includes Federal estate tax, LSA-R.S. 9:2431(7).
The freedom of the testator to direct against the apportionment of Federal estate taxes and to provide for the distribution of those taxes among the heirs and legatees as he sees fit was recognized by this Court in Succession of Jarreau, 184 So.2d 762 (La. App. 3rd Cir. 1966). In that case the Court upheld the testator's direction that the burden of Federal estate and State inheritance taxes would be borne by the residuary legatee and that the special legatees take their *1347 donations unreduced by taxes. The court stated:
"A testator may circumvent the rule of apportionment as provided by LSA-R.S. 9:2432, et seq. by a clear and unequivocal order directing the apportionment of federal and state inheritance taxes to be paid in the particular manner that he so desires."
Upon appeal of Jarreau, the Supreme Court refused writs, stating that it found no error of law in the judgment of the Court of Appeal.
This principle has also been recognized by other courts of this State and by numerous courts of other states which have similar apportionment statutes. Succession of Jones, 172 So.2d 312 (La.App. 4th Cir. 1965); Succession of Bright, 300 So.2d 614 (La. App. 4th Cir. 1974); Starr v. Watrous, 116 Conn. 448, 165 A. 459 (1933); In re Johnson's Estate, 220 Iowa 424, 262 N.W. 811 (1935); In re Brown's Estate, 208 Pa. 161, 57 A. 360 (1904). See also 71 A.L.R.3d 308 (subsection 17).

II.
The second issue before the Court is whether a testator, by a direction in the will, can relieve a special legatee from the burden of Louisiana inheritance tax. The Louisiana Estate Tax Apportionment Law, quoted above, specifically excludes from its purview state inheritance tax (LSA-R.S. 9:2431(7)). Instead, the law defines inheritance tax, not as a tax on the whole estate, but as a tax on each inheritance, legacy, or gift in anticipation of death (LSA-R.S. 47:2401, et seq). The amount of the tax due on each bequest is fixed by a judge in a court proceeding in which each legatee or heir is joined as a defendant. By its very nature and method of calculation, the state inheritance tax is apportioned among the donees and its inclusion in the Louisiana Estate Apportionment Law was not necessary.
In the Succession of Jarreau, supra, this Court recognized the testator's power to relieve a specific legatee from the payment of State inheritance taxes and to place that burden on other donees. In both Succession of Jones and Succession of Bright, supra, the wills in question included directions that inheritance taxes, as well as the estate taxes, be paid out of the residuum and not imposed on each donee. The courts in both cases gave effect to the testator's directions. Thus, it is well settled in this State that the testator is free to reapportion the payment of State inheritance taxes, as well as Federal estate taxes by a specific direction in the testament.

III.
Having established that as a matter of law a testator may direct against the apportionment of both Federal estate and State inheritance taxes, we turn our attention to the question of whether the language in the codicil in question expresses with sufficient clarity such a direction. The codicil provides: "The inheritance and estate taxes due by Mr. Garland Castex and Marcel J. Bulliard are to be paid by my estate."
The testator's intent to free a legacy from apportionment must be clear and unambiguous, since the practical effect of such intent is to increase the particular gift and shift the burden of taxation elsewhere. Succession of Jones, supra, and Succession of Bright, supra. However, there is no set formula or combination of words for the testator to use. Instead, a few simple words will suffice to indicate the intent and to effectuate the testator's purpose. Succession of Jones, supra; Star v. Watrous, 116 Conn. 448, 165 A. 459 (1933); In re Johnson's Estate, 220 Iowa 424, 262 N.W. 811 (1935). In determining the testator's intent, the central question is not what did the testator mean to say, but what did he mean by what he said. Succession of Jones, supra.
In Succession of Watrous, supra, the testator provided: "I direct that all my just debts, funeral expenses, succession and other taxes be paid by my executors hereinafter named. . . ." The Supreme Court of Connecticut found the language to indicate that all Federal and state inheritance *1348 and estate taxes were to be payable out of the general estate and all particular legacies were to be left intact.
If there is any doubt respecting the testator's directions as to who is to bear the estate or inheritance taxes, a construction will be accorded the testator's language which benefits persons who are the object of his concern. Succession of Jarreau, supra. In the instant case, the testator clearly intended to favor Garland Castex and Marcel J. Bulliard. Their bequests far surpass in value those to the other legatees. Castex is referred to in the will as "my dear friend." Marcel J. Bulliard was the testator's godchild and also is the named executor.
Plaintiffs contend the words "by my estate" only serve to confirm the statutory scheme of apportionment of the taxes. Under familiar principles of interpretation, courts seek to give meaning to all of the testamentary language and to avoid interpretations that render the language meaningless or reduce it to surplusage. Additionally, the will as a whole must be considered in order to derive the testator's intent. Succession of Waterman, 298 So.2d 731 (La.1974). The testatrix's primary reason for troubling with a codicil seems to be the alleviation of the tax burden on Castex and Marcel J. Bulliard. The only other substantive language in the codicil is the naming of a new attorney.
Both inheritance and estate taxes are mentioned specifically by the testatrix. There seems to be no other plausible explanation for the language in the codicil except to clearly favor Castex and Marcel J. Bulliard by giving to them their legacies intact, free of the burden of taxation and by placing that burden elsewhere.

IV.
Having resolved that the language of the testament includes a direction by the testator to relieve the legacies to Castex and Marcel J. Bulliard from taxation, we must face the question of who will bear the additional tax burden.
In determining which part of the succession will be debited, the primary question is what is the intent of the testatrix as evidenced in the codicil. The words "by my estate" are generally interpreted by courts to mean "by the general estate." This language indicates the testator's desire that the taxes owed by the favored legacies be subtracted from the gross estate before the distribution of any other legacies or inheritances. Additionally, the testatrix has directed that Castex and Marcel J. Bulliard receive their legacies intact and, therefore, the amount of these two unreduced legacies must also be subtracted from the gross estate. In other words, it was the testatrix's intent, by her direction in the codicil, that the legacies of Castex and Marcel J. Bulliard, as well as the taxes due on them, and the expenses and debts of the succession, be subtracted from the gross estate before the other particular legacies are distributed. In Succession of Bright, supra, the court followed this same method of calculation where the testator directed all taxes on a particular legacy to be paid by "the assets constituting my Estate."
The practical effect of this method of calculation is that the particular legacies are reduced and the residuum is eliminated. It is not correct, however, to say that the estate and inheritance taxes are paid out of the residuary estate. If the testatrix had directed that the taxes on the preferred legacies come out of the residuum, the legacies would only be released from the burden of taxation to the extent that a residuum existed. To the extent that the residuum was not sufficient to cover the taxes, the direction of the testator would fall. See annotation at 37 ALR 7. See also 71 A.L. R.3d 274. This is not the situation in the instant case.
Here we have a testatrix who clearly intended that her general estate pay the taxes on the preferred legacies. The method of calculation used by the executor is correct.

V.
The last question before the Court is whether the tax-exempt legacy to St. *1349 Joseph Church should be reduced in order to pay the estate and inheritance taxes on the gifts to Castex and Marcel J. Bulliard.
In Succession of Bright, supra, the testator made several particular legacies and willed the remainder of her succession to two conjoint legatees. One of these was a tax-exempt charity, as in the instant case. The court in Bright held the burden of tax charges on the preferred legacies was to be deducted before the residuum was distributed to the residuary legatees. The practical effect of this method of calculation was that the tax-exempt legatee bore one-half of the burden of the estate and inheritance taxes due on the particular legacies.
A tax-exempt status means that a sovereign, for certain policy reasons, has chosen not to tax that entity. The church in questions enjoys a tax-exempt status as to both state inheritance taxes and Federal estate taxes. This means that the church is not assessed by either the state or Federal Government for those taxes on the gifts it receives in the testament. Indeed, no such taxes are charged against the church in the proposed tableau of distribution. However, a tax-exempt status does not mean that a legatee is freed from any charges that a testator may impose by the terms of his will. In the instant case, the payment of the taxes due on the legacies to Castex and Marcel J. Bulliard are not additional taxes imposed by a sovereign, but are charges on the legacies made by the testatrix herself.
The concept of a donation subject to a charge is familiar in Louisiana law. LSA-C.C. Article 1527 provides:
"The donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals."
See also Succession of Ruxton, 226 La. 1088, 78 So.2d 183 (1955). This court can find nothing contrary to public policy or to good morals in the donation in the instant case. We hold that the donation to the church, despite its tax-exempt status, must be reduced along with the other non-preferred legacies in order to pay the estate and inheritance taxes on the legacies to Castex and Marcel J. Bulliard.
For the reasons assigned, the judgment appealed is affirmed. The costs of appeal are assessed against the plaintiffs-appellants.
AFFIRMED.
NOTES
[1] LSA-R.S. 9:2432(A) also provides for the apportionment among heirs or legatees of the Louisiana estate transfer tax. In this case, however, no such tax was levied against the estate. The payment of this tax is therefore not an issue in this case.
[2] An exception to this rule occurs in the case of life insurance passing directly to the beneficiaries and certain property subject to powers of appointment.