590 So.2d 606 (1991)
SUCCESSION OF J.A. RUSSELL.
No. 90-228.
Court of Appeal of Louisiana, Third Circuit.
October 18, 1991.
Writ Denied January 10, 1992.
*608 Schrumpf & Schrumpf, Liver J. Schrumpf, Sulphur, for appellant.
Gahagan & Conlay, Henry C. Gahagan, Jr., Natchitoches, for appellee.
Before GUIDRY, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
This appeal concerns the apportionment of estate taxes in a succession proceeding and the validity of a testamentary clause imposing certain conditions on immovable property inherited by several legatees.

FACTS
J.A. Russell, a resident of Natchitoches Parish, died testate on May 29, 1980. The decedent's will and two codicils provided in pertinent part:
"I, James A. Russell, make this my last will and testament, revoking all others. At my death, I make the following disposition of my estate.
I desire that from the mass of my estate all debts, including death taxes, cost of administration of my estate, and any other expenses be paid.
The farm owned by me in Natchitoches Parish, Louisiana, about six miles below the City of Natchitoches, lying on both sides of Cane River, in Wards One and Nine, I leave as follows:
That portion of the farm located on the east side of Cane River, I bequeath to my grandson, James Michael LaCour; and that portion located on the west side of Cane River, I bequeath to my daughter and my son, of which my son, James B. Russell, is to receive the south half and my daughter, Dorothy Mae Russell Lacour is to receive the north half.
* * * * * *
All of the property owned by me in Madison Parish, Louisiana, I leave as follows:
This property adjoins property of Dr. Donaldson and is located in a bend of the Tensas River which is the bounday [sic] of the property on all sides except where it joins the property of Donaldson. I desire that this property be divided into three equal tracts with the line separating the three tracts to run approximately parallel to the dividing line with the Donaldson property and a cleared right-of-way strip which borders the two properties.
I leave the one-third of the Madison Parish property adjoining the property of Donaldson and camp house thereon to my daughter, Dorothy Mae Russell Lacour. There is a camp house situated on this portion of the property and upon, James B. Russell, shall have the right to share the use of the camp house and any other improvements on this portion of the property, but this right shall be personal to him and will terminate should he ever dispose of the one-third portion of this property that I am leaving to him.... I leave to my grandson, James Michael Lacour, the one-third portion of the Madison Parish property adjoining and adjacent to the one-third interest I have given to his mother, Dorothy Mae Russell Lacour. The remaining one-third of the Madison Parish property, ... I leave to my son, James B. Russell.
* * * * * *
All of the remainder of my estate, property of every description, nature and kind, I leave to my two children, James B. Russell and Dorothy Mae Russell Lacour, in equal portions, share and share alike.
* * * * * * *609 It is my desire that the property I own at the time of my death be held together as long as possible. To this end, I make as a condition of ownership of the immovables which my two children and my grandson inherit from me that before any of them may sell his or her interest in any such property to a third party he or she must offer to the other two the right to purchase the property jointly for not more than the price offered by such third party. The two to whom the offer to sell has been made shall have fourteen days from receipt of the offer to sell within which to accept or reject the offer to sell, and if the offer is accepted they shall have the period of sixty days to complete the purchase of the property from the one desiring to sell. In the event one of the two to whom the offer to sell has been made desires not to purchase, the remaining one who wishes to purchase shall have the right to purchase the entire offering.
* * * * * *
I name my two children as the joint executors of this will and give them full seisin of all of my estate.
I dispense with the necessity of my executors furnishing any bond."
In August, 1980, the decedent's two children, Dorothy Russell LaCour (Dorothy) and James Ben Russell (Ben), were confirmed as co-executors and the succession was placed under administration.
Calculations placed the value of the estate at approximately $1.2 million and the federal estate tax at approximately $257,729. According to testimony, the federal estate tax was paid with a liquid portion of the estate (cash and bonds) and by securing loans on immovable property inherited by Dorothy and Ben. The immovable property bequeathed to the testator's grandson, Michael LaCour, was never mortgaged to pay a portion of the estate tax.
In August of 1982, an audit by the Internal Revenue Service revealed that the immovable properties contained in the estate were undervalued. A revised estate tax calculation showed that an additional $90,726 was due plus approximately $21,000 interest. Dorothy, as co-executor, paid the $90,726 with personal funds acquired by mortgaging her inherited immovable property for $80,530 and by paying $10,196 out of two estate bank accounts. The entire tax liability of the estate was $416,201 ($369,456 Federal and $46,745 State).
In November of 1982, Dorothy filed a rule nisi against Ben requesting that he reimburse her for one-half of the taxes, interest due, related expenses, and attorney fees. At the hearing, the trial court ruled in favor of Dorothy and ordered Ben to pay $40,265 plus one-half of the attorney fees.[1] The trial court opined that Ben, as co-executor, had a fiduciary duty to preserve the property of the succession. A judgment to this effect was signed on April 14, 1983, and was not appealed.
On August 1, 1985, all three legatees filed a joint petition for declaratory judgment requesting that the court resolve numerous issues.
The first issue concerned the apportionment of tax liability. Ben contended that all three legatees should bear the tax liability in proportion to their respective shares of the entire estate as mandated in LSA-R.S. 9:2432(A). Dorothy and Michael contended that the testator altered the statutory method of tax apportionment and provided that Ben and Dorothy equally share the tax liability while Michael receives his legacy tax-free.
The second issue was the testator's right of first refusal clause wherein a legatee is required to offer his inherited immovable property to the other legatees at the same purchase price before selling to a third party. Ben contended this right of first refusal clause is a prohibited substitution and is invalid. Dorothy and Michael averred that the right of first refusal clause is not against public policy and is a valid testamentary condition.
*610 The third issue addressed the validity of the judgment Dorothy obtained against Ben for $40,265 and attorney fees. Ben contended that the judgment was null and void because of various defects.
Following the filing of a supplemental and amending joint petition for declaratory judgment in which other issues were raised, such as the testamentary capacity of the testator, Dorothy and Michael filed a peremptory exception of res judicata on the issue of tax apportionment. They contended that the judgment of April 14, 1983, granting Dorothy judgment against Ben for $40,265 was res judicata and could not be relitigated. They further averred that the April judgment was also res judicata on the question of tax apportionment raised by Ben in the petition for declaratory judgment.
In its judgment, the trial court ruled: 1) the money judgment of April 14, 1983, was res judicata and could not be relitigated; 2) the testator altered the normal apportionment of tax liability under LSA-R.S. 9:2432, thus, apportioning the estate tax equally between Dorothy and Ben, and allowed Michael to receive his particular legacies tax-free; and, 3) the right of first refusal clause contained in the will was not against public policy and was valid.
Ben contends that the trial court erred in its rulings on all three issues. Dorothy and Michael answered the appeal and aver that Ben has no right to a devolutive appeal from this judgment.

RES JUDICATA
Ben contends that the trial court erred in granting the peremptory exception of res judicata. He argues that the cause of action in the rule nisi and the petition for declaratory judgment for apportionment of tax was different, and he urges that the April 14, 1983, judgment was interlocutory and therefore unappealable.
After carefully reviewing the record, we find the April 14, 1983, judgment failed to decree on the issue of apportionment of estate taxes. It is a money judgment against Ben. In pertinent part, it reads:
"James Ben Russell is condemned to pay to Dorothy Russell LaCour the sum of $40,265.22, said sum being one-half of the total amount expended by Dorothy Russell LaCour in federal estate taxes, payment being necessary when the coexecutor James Ben Russell refused to pay that portion of the tax which he previously agreed to pay i.e., $40,265.22."
In the trial court's written reasons for the declaratory judgment dated November 22, 1989, it held that the April 14, 1983, judgment made the issue of apportionment of estate taxes res judicata. The declaratory judgment limits the peremptory exception of res judicata to the April 14, 1983, judgment. In pertinent part, the declaratory judgment read:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that with regard to the money judgment dated April 14, 1983, there be judgment herein in favor of Dorothy Russell LaCour and against James Ben Russell sustaining the exception of res judicata and further declaring that said judgment is final and unappealable."
Thus, it is clear that the present judgment makes no reference to a finding that res judicata applied to the issue of tax apportionment found in the determination of the petition for declaratory judgment. Since the issue of apportionment of estate taxes was never incorporated into a judgment that issue was not subject to a peremptory exception of res judicata. Only the money judgment against Ben of April 14, 1983, is subject to res judicata. Neither Dorothy nor Michael answered Ben's appeal or appealed independently, asking us to conform the trial court's judgment to its findings in its written reasons for judgment.
Generally, the decisions, opinions or findings of a court do not constitute a judgment, but merely form the basis for the judgment. State ex rel. Nicholas v. State, 520 So.2d 377 (La.1988). Any disparity existing between the reasons for judgment and the judgment is controlled by the judgment. Louisiana Ins. Guar. v. Intern. Ins. Co., 551 So.2d 50 (La.App. 1st Cir.1989). Accordingly, we can only address *611 the issue of res judicata as it relates to the April 14, 1983, judgment, since the judgment on appeal only recognized the peremptory exception to that extent.
We will now address the issue of res judicata as it pertains to the April 14, 1983, money judgment. For the doctrine of res judicata to apply, the judgment must be a final judgment. Succession of Cameron, 446 So.2d 948 (La.App. 3rd Cir.1984). The subsequent action must be between the same parties, be based on the same cause of action, and the thing demanded must be the same. Gross v. Continental Ins. Co., 451 So.2d 1285 (La.App. 1st Cir.1984).
From just a cursory reading of Ben's reasons for attacking the April 1983 judgment in the joint petition for declaratory judgment, it is clear that the parties, cause of action, and thing demanded are the same. Moreover, it is evident that Ben is attempting to substitute the hearing on the motion for declaratory judgment for the motion for new trial and appeal which he never sought after the April 14 judgment was rendered. Accordingly, we find that the trial court properly granted the peremptory exception of res judicata.
In a separate argument, Ben contends that the April 14, 1983, judgment was interlocutory, and that it was not appealable until the trial court rendered judgment in the petition for declaratory judgment. We disagree.
In Succession of Honeycutt, 265 So.2d 336 (La.App. 3rd Cir.1972), the testamentary executor of the estate provoked a hearing on whether federal estate taxes should be apportioned according to LSA-R.S. 9:2432. After ruling that apportionment was called for, the trial court judgment was not appealed by the particular legatee. Sometime later, the particular legatee filed a petition asserting that the estate taxes should not have been apportioned. In upholding the trial court's dismissal of the particular legatee's claim on a peremptory exception of no cause of action, we held that the earlier ruling at the hearing on whether the taxes should be apportioned was a final appealable judgment; accordingly, the particular legatee was barred from relitigating the question of the apportionment of taxes since she had not appealed the earlier adverse judgment.
After carefully reviewing the record in the case sub judice, we find that the April 14, 1983, judgment was a final appealable money judgment. Succession of Honeycutt, supra. At that time, the trial court granted Dorothy a money judgment against Ben for $40,265 plus attorney fees. If Ben wanted to contest that judgment, it was encumbent upon him to seek appellate review within the time restraints laid out in the Code of Procedure. Therefore, we are now powerless to grant the relief prayed for.

APPORTIONMENT OF ESTATE TAXES
The second assignment of error concerns the trial court's conclusion that the testator altered the normal scheme of tax apportionment and allocated the estate taxes one-half to Dorothy and one-half to Ben. Ben contends that the testamentary language is not an apportionment of taxes as contemplated by LSA-R.S. 9:2432. We disagree.
LSA-R.S. 9:2432 provides:
"A. If the deceased has made no provision in his testament for the apportionment of the tax among the persons interested in the estate, the tax shall be apportioned among them by the court in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate. The values used in determining the tax shall be used for this purpose.
B. If the deceased has provided in his testament for the apportionment of the tax among all the persons interested in the estate, the court shall apportion the tax as directed by the deceased.
C. If the deceased has provided in his testament for the apportionment of the tax of some, but not of all the persons interested in the estate, the amount of the tax which has not been apportioned shall be apportioned by the court among those as to whom no provision has been *612 made, in the same manner as is provided in Sub-section A of this Section."
The rule of apportionment provided by LSA-R.S. 9:2432 must be followed unless the testator has made provisions in the will for the apportioning of the tax among the persons interested in the estate in the manner he desires. Succession of Jones, 172 So.2d 312 (La.App. 4th Cir.1965), writ refused, 247 La. 718, 174 So.2d 131 (1965). The testator's intent to free a legacy from apportionment must be clear and unambiguous, since the practicable effect of such intent is to increase the particular gift and shift the burden of taxation elsewhere. Id. No set formula or combination of words is required to shift the tax burden. Rather, a few simple words will suffice to indicate the intent and to effectuate the testator's purpose. Bulliard v. Bulliard, 363 So.2d 1343 (La.App. 3rd Cir.1978), writ refused, 365 So.2d 244 (La.1978). If there is any doubt respecting the testator's direction as to who is to bear the estate taxes, a construction will be accorded the testator's language which benefits persons who are the object of his concern. Succession of Jones, supra. In ascertaining the testator's intent, the central question is not what did the testator mean to say, but what did the testator mean by what he said. Id.
Before embarking on an analysis of the will provision at issue, we find it necessary to recall that a testamentary disposition must be understood in the sense in which it can have effect, rather than one in which it can have none. LSA-C.C. Art. 1713. As Justice Hamiter stated in Succession of Lambert, 210 La. 636, 28 So.2d 1, 8 (1946):
"It is a cardinal rule of testamentary construction that each and every part of the will shall be given effect; no word, phrase or clause shall be declared surplusage if it can be afforded a reasonable and legal interpretation. On this subject we said in Succession of Price, 202 La. 842, 13 So.2d 240, 244, that:
"`To determine the intention of the testator the whole will is to be taken into consideration. Every word must be given effect if that can be done without defeating the general purpose of the will which is to be made effective in every reasonable method. Succession of Allen, 48 La.Ann. 1036, 20 So. 193, 55 Am. St.Rep. 295; Gueydan v. Montagne, 109 La. 38, 33 So. 61; Succession of Fath, 144 La. 463, 80 So. 659. No part of the testament should be rejected, except that which the law makes it necessary to reject. Succession of La Barre, 179 La. 45, 46, 153 So. 15.'"
At issue in the case sub judice is the following provision:
"I desire that from the mass of my estate all debts, including death taxes, cost of administration of my estate, and any other expenses be paid."
As the testator's testament is written, we believe it reasonable to conclude that his inclusion of death taxes in the directory language to his executors constitutes an intent that his residuary estate absorb the taxes. In reaching this conclusion, we rely on Succession of Jones, supra, and Succession of Jarreau v. Succession of Jarreau, 184 So.2d 762 (La.App. 3rd Cir.1966), writ refused, 249 La. 202, 186 So.2d 160 (La.1966). With particularity, equally applicable to the case sub judice, Judge Fruge commented in Succession of Jarreau, at page 765:
"If no reference to taxes had been made by the testatrix, the taxes, both federal and state, would have been paid routinely by the executrix. The fact that the testatrix, by clear, unequivocal language, directed the payment of the taxes when she need not have, leads this court to the conclusion, as in the Jones case, supra, that the residuary estate was intended by the testatrix to absorb the taxes. The executrix (the residuary legatee) would have us treat the provision in the will as mere surplusage and close our eyes to it completely.
* * * * * *
We must agree with the trial court that it is the duty of the courts to give meaning to the entire will. Had the testatrix not intended the taxes to be paid by the residual estate, then she need not have *613 made reference to how the taxes were to be paid in her will. Since she did indicate how the taxes were to be paid, as did the testator in the Jones case, in clear and unequivocal language, with the obvious purpose of directing her executrix to pay all the federal estate and state inheritance taxes from the bulk of the estate so that the particular legacies would not be taxed."
Accordingly, based on the foregoing, we find that the testator's statement that the death taxes were to be paid by the mass of the estate altered the statutory apportionment of tax liabilities among legatees so that Michael's particular legacies are received tax-free. Therefore we find no error in the trial court's determination of this issue.

RIGHT OF FIRST REFUSAL
The last assignment of error concerns the testator's right of first refusal clause, which reads:
"It is my desire that the property I own at the time of my death be held together as long as possible. To this end, I make as a condition of ownership of the immovables which my two children and my grandson inherit from me that before any of them may sell his or her interest in any such property to a third party he or she must offer to the other two the right to purchase the property jointly for not more than the price offered by such third party. The two to whom the offer to sell has been made shall have fourteen days from receipt of the offer to sell within which to accept or reject the offer to sell, and if the offer is accepted they shall have the period of sixty days to complete the purchase of the property from the one desiring to sell. In the event one of the two to whom the offer to sell has been made desires not to purchase, the remaining one who wishes to purchase shall have the right to purchase the entire offering."
Ben contends the clause violates public policy and is unenforceable. We disagree.
LSA-C.C. Art. 1519 provides:
"In all dispositions inter vivos and mortis causa impossible conditions, those which are contrary to the laws or to morals, are reputed not written."
LSA-C.C. Art. 1520 provides:
"Substitutions are and remain prohibited, except as permitted by the laws relating to trusts.
Every disposition not in trust by which the donee, the heir, or legatee is charged to preserve for and to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee."
Elements of a prohibited substitution are: 1) a double disposition in full ownership; 2) a charge on the donee to preserve and render the property to another; and, 3) in successive order. Baten v. Taylor, 386 So.2d 333 (La.1979).
Commenting on the validity of conditions placed on donees of immovable property, our Supreme Court stated:
"In Female Orphan Society v. Young Men's Christian Ass'n, 119 La. 287 [278] [sic], 44 So. 15, 12 Ann.Cas. 811, a condition of perpetual and total inalienability was held to be void as putting property out of commerce, and therefore against public policy, but between total and perpetual inalienability and partial and temporary inalienability there is a very wide difference. The insertion of a condition of the latter character in contracts and donations is a matter of everyday occurrence, with challenge from no quarter. The question of how far such a condition will be sustained is one dependent very much upon the facts of each particular case. If the condition is founded upon no substantial reason but merely in caprice, and is of a character to tie up property to the detriment of the public interest, it will not be sustained; otherwise it will."
Queensborough Land Co. v. Cazeaux, 136 La. 724, 729, 67 So. 641, 644 (1915).
In Terrell v. Messenger, 428 So.2d 1241 (La.App. 3rd Cir.1983), writ denied, 433 So.2d 709 (La.1983), this court dealt with a right of first refusal clause in a cash sale deed between the seller which required that before any of the vendees sell their interest in the property, they must first *614 offer their interest to the other vendees at the same price. In addition, the seller required that none of the vendees sell their interest in the property during her lifetime. We concluded that the first condition was neither a total and perpetual inalienability nor a partial and temporary inalienability.
In the case sub judice, a cursory inspection shows that the testator's clause lacks both a double disposition in full ownership and a charge on the donee to preserve and render the property to another. The clause merely limits the first choice of buying the property to the family.
In addition, the right of first refusal clause is neither a condition of total and perpetual inalienability nor partial and temporary inalienability. The clause does not prohibit the sale of the properties but rather reflects the testator's intent to keep the properties together and owned by family members for as long as possible. This aim is accomplished by restricting the sale of the properties to certain persons first rather than removing the properties from the stream of commerce. Each legatee may sell his or her inherited property for any price to any third party so long as the property is first offered to the other legatees at the same price. This testamentary condition does not remove the properties from the stream of commerce and is valid.

ANSWER TO APPEAL
Dorothy and Michael answered the appeal and contend Ben has no right to a devolutive appeal. We disagree.
Although Dorothy and Michael did not file a memorandum and state the reasons for their assertion, out of an abundance of caution, we have examined the record for any appeal errors on its face. The record shows that Ben filed his devolutive appeal within the statutorily prescribed appeal period.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to James Ben Russell.
AFFIRMED.
NOTES
[1] The record shows that the interest was not yet exactly calculated and Dorothy's payment was delayed. For this reason, the judgment in the rule nisi did not include an award for one-half the interest.