780 So.2d 1168 (2001)
In the Matter of: SUCCESSION OF Hilton J. HAYDEL.
No. 2000 CA 0085.
Court of Appeal of Louisiana, First Circuit.
February 16, 2001.
Rehearing Denied April 2, 2001.
*1169 Earl Reynolds, Baton Rouge, for Appellee John Lieux, Executor of the Succession of Hilton J. Haydel.
David H. Garrett, Baton Rouge, for Appellant Loretta Haydel.
James C. Percy, Percy, Pujol & Wall, Baton Rouge, for Appellees Dennis Haydel, Bryan Haydel, Gregory Haydel, Karen H. Kimball, and Reva H. Lesage.
*1170 Before: PARRO, FITZSIMMONS, and GUIDRY, JJ.
PARRO, J.
The surviving spouse, who held a qualifying income interest for life in qualified terminable interest property that formed the residuary of her deceased husband's estate, appeals the judgment of the trial court declaring that the residual estate was responsible for federal estate and state estate transfer taxes chargeable to particular legacies based on the language found in her deceased husband's will. For the following reasons, we affirm.

Facts and Procedural History
Hilton J. Haydel (Haydel), a resident of Ascension Parish, Louisiana, died on November 23, 1996. Haydel was married twice.[1] He was survived by his wife of his second marriage, Loretta DeLatte Haydel (Loretta), and seven children. Five of his children were born of his first marriage, namely: Dennis, Bryan, Gregory, Karen, and Reva; and twins girls, Shawn and Dawn, were born of his second marriage.[2]
Several years prior to his death, on May 4, 1993, Haydel had the following documents prepared: "Last Will and Testament of Hilton J. Haydel," "The Karen and Reva Haydel Trust," and "The Loretta Haydel QTIP Trust." By the first disposition in his will, Haydel made his wife a particular legatee by leaving her his one-half interest in the family home. In subsequent dispositions, he made her a particular legatee of his one-half interest in the contents of the family home, personally owned automobiles, personal movable property, and life insurance policies.
In addition to the particular legacies to his wife, Haydel made his three sons, Dennis, Bryan, and Gregory, particular legatees of his stock in Ascension Roofing & Sheet Metal, Inc. The Karen and Reva Haydel Trust was also named as a particular legatee with respect to Haydel's separately-owned immovable property and his one-half interest in community-owned immovable property, excepting the homestead.
The remainder of his estate was left to The Loretta Haydel QTIP Trust (QTIP Trust) of which Loretta was designated as the income beneficiary and his seven children were designated as the principal beneficiaries.[3] Haydel instructed that the assets placed in the QTIP Trust be allocated among the principal beneficiaries as follows:
My "net children's estate", for purposes of this computation and allocation, shall be computed as of the date of my death and shall be comprised of all assets of my estate which are subject to "probate", excluding all assets left to my said wife, less all debts and funeral and administration expenses and federal estate taxes and Louisiana estate transfer taxes (but not including inheritance taxes) attributable to those assets. The resulting value ("net children's estate") shall be divided by seven; each child's share of the trust corpus shall be the fraction that is equivalent to that value less the value of other probate assets (or fractional interests therein) left to that child, such that this fictitious collation results in equal values (of probate assets) being distributed to my seven children. For these purposes the values as finally determined for federal estate tax purposes (or, if no federal estate tax return is due, for Louisiana death tax purposes) as of the date of my death shall determine the allocation under the above formula. No adjustments in the relative values shall be made for income interests which precede the principal beneficiaries' benefits under the trust. Nor shall any collation or adjustments be made on account of lifetime gifts or *1171 assets received contractually from my estate, even if at a bargain or subject to gift taxes.
Should the above formula result in a negative share to any child, that child's share of the corpus shall be adjusted to the fractional equivalent of One thousand ($1000) dollars, the negative balance to be absorbed ratably by the other principal shares having positive balances.
Calculations placed the value of the entire estate at more than $2,000,000, the federal estate tax at $218,855.24, and the Louisiana estate transfer tax at $16,041.34.[4] The federal estate taxes and state estate transfer taxes were paid by the executor of the estate. Subsequently, John Lieux (Lieux), in his capacity as executor of Haydel's estate and as trustee of the QTIP Trust, filed a rule directed to Haydel's surviving spouse, Loretta, to determine the apportionment of the federal estate taxes and state estate transfer taxes. In his rule, believing that Haydel had not made any provision in his will for the apportionment of such taxes, Lieux sought to have these taxes apportioned to the legatees, namely, Haydel's three sons, The Karen and Reva Haydel Trust, and the QTIP Trust, in the proportion of the value of the property received to the total value of the property in the entire estate in accordance with the provisions of LSA-R.S. 9:2432(A). Lieux's rule was opposed by Loretta citing LSA-R.S. 9:2435, which pertains to allowances for exemptions, deductions, and credits, and 26 U.S.C.A. § 2056(a) and (b)(7), which provides for marital deductions from the gross estate.
After a closer reading of Haydel's will, Lieux filed a supplemental memorandum seeking to have the QTIP Trust, as residuary legatee,[5] declared responsible for the entire estate tax liability which was attributable to the particular legacies. Lieux suggested that the formula for determining the "net children's estate" was a directive by Haydel regarding the apportionment of taxes among the persons interested in the estate as authorized by the provisions of LSA-R.S. 9:2432(B). In rebuttal to Lieux's supplemental memorandum, Loretta contended that Haydel did not make provision for the apportionment of taxes. Moreover, she once again asserted that the provisions of LSA-R.S. 9:2435(A) and (B) eliminate the apportionment of such taxes to a QTIP Trust.
Following a hearing in this matter, the trial court, relying on Succession of Jones, 172 So.2d 312 (La.App. 4th Cir.), writ denied, 247 La. 718, 174 So.2d 131 (1965), found that Haydel included a provision in his will regarding the payment of estate taxes, which rendered the residual estate responsible for payment of all federal estate and state estate transfer taxes. Subsequently, a judgment was signed by the trial court authorizing Lieux to apportion the federal estate and state estate transfer taxes to the residual estate. Loretta appealed, contending the trial court erred in failing to find that Haydel intended for the taxes to be apportioned among his children of his first marriage.[6] She also urges that the trial court erred in failing to consider the following: the taxation of property in the QTIP Trust upon Loretta's death, the impact its decision will have on the amount of taxes owed, and the failure to achieve equalization of the values of probate assets to each of Haydel's seven children.
Loretta contends essentially that the particular legatees should bear the estate tax liability associated with his or her particular legacy. On the other hand, Lieux *1172 asserts that Haydel altered the statutory method of estate tax apportionment and provided that the residual estate would bear the tax liability with the affected particular legatees (Dennis, Bryan, Gregory, and The Karen and Reva Haydel Trust) receiving their particular legacies tax free. Thus, the initial issue before this court is whether the "net children's estate" provision in Haydel's will operates as a directive against the statutory apportionment of the federal estate and state estate transfer taxes on each legatee, thereby relieving some legatees from the payment of his or her appropriate share of said taxes.

Provision for Apportionment of Taxes
The federal estate tax is a charge on the transfer of the taxable estate of the deceased. See 26 U.S.C.A. § 2001; Bulliard v. Bulliard, 363 So.2d 1343, 1346 (La. App. 3rd Cir.), writ denied, 365 So.2d 244 (La.1978). Louisiana imposes an estate transfer tax upon all estates which are subject to federal estate taxation under the Internal Revenue Code. LSA-R.S. 47:2431.
Generally, the value of any interest in property which passes from the decedent to his surviving spouse, to the extent that such interest is included in determining the value of the gross estate, is deducted from the value of the gross estate in determining the taxable estate. 26 U.S.C.A. § 2056(a). Furthermore, a decedent's executor may elect to have the property in which a qualifying income interest for life passes from the decedent to his surviving spouse qualify for the marital deduction. 26 U.S.C.A. § 2056(b)(7). To be a qualifying income interest for life, the surviving spouse must be entitled to all the income from the property payable at least annually, and no person can have a power of appointment exercisable during the surviving spouse's lifetime to appoint any part of the property to any person other than the surviving spouse. 26 U.S.C.A. § 2056(b)(7)(B)(ii). The amount deductible is the value of the property in which the spouse has a qualifying income interest. Such property is called "qualified terminable interest property." 26 U.S.C.A. § 2056(b)(7)(B)(i). The executor's election must be made on the estate tax return and, once made, is irrevocable. 26 U.S.C.A. § 2056(b)(7)(B)(v). Such an election does not eliminate the tax on the qualified terminable interest property. Instead, it merely defers the payment of estate taxes on this property until it comes out of the marital unit by reason of the surviving spouse's death or inter vivos gift of the income interest to another. See 26 U.S.C.A. § 2044.
It is undisputed that Lieux made such an election on the estate tax return with respect to the QTIP Trust established in this case. Accordingly, the estate obtained a marital deduction equal to the value of the property placed in the QTIP Trust by virtue of the trust document establishing Loretta with a qualifying income interest for life in that trust. Lieux does not dispute that this property passed from Haydel's estate to the QTIP Trust free of federal estate tax and Louisiana estate transfer tax.
Although federal law provides for a marital deduction, it makes no provision applicable herein as to the apportionment of the estate tax;[7] therefore, state law can determine where the burden of the federal estate tax, as well as the Louisiana estate transfer tax, shall fall. See Bulliard v. Bulliard, 363 So.2d at 1346.
With respect to the apportionment of estate taxes, LSA-R.S. 9:2432 provides:
A. If the deceased has made no provision in his testament for the apportionment of the tax among the persons interested in the estate, the tax shall be apportioned among them by the court in the proportion that the value of the interest *1173 of each person interested in the estate bears to the total value of the interests of all persons interested in the estate. The values used in determining the tax shall be used for this purpose.
B. If the deceased has provided in his testament for the apportionment of the tax among all the persons interested in the estate, the court shall apportion the tax as directed by the deceased.
C. If the deceased has provided in his testament for the apportionment of the tax of some, but not of all the persons interested in the estate, the amount of the tax which has not been apportioned shall be apportioned by the court among those as to whom no provision has been made, in the same manner as is provided in Sub-section A of this Section.
The word "tax" in the above statute includes federal estate tax. LSA-R.S. 9:2431(7).
The rule of apportionment provided by LSA-R.S. 9:2432(A) must be followed unless the testator has made provisions in the will for the apportionment of the tax among the persons interested in the estate. Succession of Jones, 172 So.2d at 314; Succession of Russell, 590 So.2d 606, 612 (La.App. 3rd Cir.1991), writ denied, 591 So.2d 700 (La.1992). The testator's intent to free a legacy from apportionment must be clear and unambiguous, since the practical effect of such intent is to increase the particular gift and shift the burden of taxation elsewhere. Succession of Jones, 172 So.2d at 314; Succession of Bright, 300 So.2d 614, 616 (La.App. 4th Cir.1974), writ dismissed, 316 So.2d 393 (La.1975).
No set formula or combination of words is required to shift the tax burden. Rather, a few simple words will suffice to indicate the intent and to effectuate the testator's purpose. Bulliard v. Bulliard, 363 So.2d at 1347. If there is any doubt respecting the testator's direction as to who is to bear the estate taxes, a construction will be accorded the testator's language which benefits persons who are the object of his concern. Succession of Jones, 172 So.2d at 315. In ascertaining the testator's intent, the central question is not what did the testator mean to say, but what did the testator mean by what he said. Succession of Jones, 172 So.2d at 315.
To determine the intention of the testator the whole will is to be taken into consideration. Every word must be given effect if that can be done without defeating the general purpose of the will which is to be made effective in every reasonable method. Succession of Fath, 144 La. 463, 80 So. 659, 660 (1919); see LSA-C.C. art. 1713 (1870).[8] No part of the testament should be rejected, except that which the law makes it necessary to reject. Succession of Price, 202 La. 842, 13 So.2d 240, 244 (1943).
At issue in this case are the will provisions quoted above pertaining to the QTIP Trust and the computation of the net children's estate. In conjunction with the computation of the net children's estate, Haydel specifically provided for the payment of federal estate taxes and state estate transfer taxes. He directed that all assets in his estate after excluding the assets left to Loretta by particular legacy, less debts, funeral expenses, administrative expenses, and estate taxes, would constitute the value of the net children's estate. Thus, the value of those assets bequeathed by particular legacies to Dennis, Bryan, Gregory, and The Karen and Reva Haydel Trust formed part of the value of the net children's estate. Haydel intended that each child receive a one-seventh interest in the resulting value of the net children's estate. From a child's one-seventh interest in the value of the net children's estate, the value of the property received via particular legacy *1174 was to be deducted to determine that child's interest in the residual estate (the QTIP Trust). Accordingly, only Shawn and Dawn, neither of whom were particular legatees, could have interests in Haydel's residual estate equal to their one-seventh interests in the value of the net children's estate. In calculating Dennis, Bryan, and Gregory's respective interests in the residual estate, Haydel directed that their one-seventh interests in the value of the net children's estate be reduced by the value of their one-third interests in the stock bequeathed to each by particular legacy. Likewise, Karen and Reva's one-seventh interests in the value of the net children's estate would be reduced by the value of their respective one-half interests in The Karen and Reva Haydel Trust in determining their interests in the residual estate.
As previously noted, Haydel instructed that estate tax charges on the particular legacies be deducted from the gross value of the assets before determining the resulting value of the "net children's estate" and each child's interest in the trust corpus of the QTIP Trust. We note that the practical effect of this method of computation was that the residual estate would be responsible for the tax charges imposed on the particular legacies. See Bulliard v. Bulliard, 363 So.2d at 1348.
Such a testamentary provision in this court's opinion clearly and unequivocally manifests Haydel's intent that the particular legacies remain in tact and unreduced. See Succession of Russell, 590 So.2d at 611-613. As Haydel's will is written, we believe it is reasonable to conclude that his inclusion of federal estate taxes and Louisiana estate transfer taxes in the directory language to his executor regarding computation of the value of the net children's estate constitutes an intent that his residual estate absorb the taxes attributable to the particular legacies as explained above. See Succession of Jones, 172 So.2d 312; Succession of Jarreau v. Succession of Jarreau, 184 So.2d 762 (La.App. 3rd Cir.), writ refused sub nom., Smith v. Crowe, 249 La. 202, 186 So.2d 160 (1966). Haydel burdened his residual estate with these tax charges while at the same time avoiding the payment of additional federal estate taxes and Louisiana estate transfer taxes on the resulting value of such residual estate by directing placement of it in a tax-exempt QTIP Trust for the benefit of his seven children as principal beneficiaries and his surviving spouse as the income beneficiary. This court concludes based on the terms of his will, that by such placement, Haydel did not intend to relieve his residual estate of the tax charges imposed by him on such residual legacy. See Succession of Farr, 492 So.2d 878, 882 (La.App. 1st Cir.), writ denied, 494 So.2d 329 (La.1986), citing Bulliard v. Bulliard, 363 So.2d at 1349. Therefore, we find no manifest error in the trial court's reasonably supported finding that Haydel had made a provision regarding the apportionment of taxes which arguably rendered the residual estate responsible for payment of the taxes in question.

Exemption for Apportionment of Taxes
A tax-exempt status of an entity means that a sovereign, for certain policy reasons, has chosen not to tax that entity. Bulliard v. Bulliard, 363 So.2d at 1349. In light of Lieux's election, the QTIP Trust in question enjoys a tax-exempt status as to federal estate taxes, as well as Louisiana estate transfer taxes, on the corpus of the residual estate. See 26 U.S.C.A. § 2056; LSA-R.S. 47:2431. This means that the QTIP Trust is not assessed federal estate taxes or state estate transfer taxes on the value of the property placed in the QTIP Trust by virtue of Haydel's will. However, a tax-exempt status does not mean that a legatee is freed from any charges that a testator may impose by the terms of his will. Bulliard v. Bulliard, 363 So.2d at 1349.
In the instant case, the taxes attributable to the particular legacies to Dennis, Bryan, Gregory, and The Karen and Reva Haydel Trust are not additional taxes imposed by a sovereign on the QTIP Trust, *1175 but are charges or conditions on the legacy made by the testator himself. See Bulliard v. Bulliard, 363 So.2d at 1349. Such a charge or condition is binding unless contrary to law or good morals. See LSA-C.C. art. 1527.[9] We find nothing in the law that would have precluded Haydel from burdening the tax-exempt QTIP Trust with such a charge or condition.[10]See Succession of Farr, 492 So.2d at 882; Bulliard v. Bulliard, 363 So.2d at 1349; Succession of Bright, 300 So.2d at 617-618. Nor do we find the charge or condition in question contrary to good morals. Accordingly, we conclude that despite the QTIP Trust's tax-exempt status, the legacy to the QTIP Trust is subject to Haydel's directives regarding the payment of federal estate and state estate transfer taxes on the particular legacies to Dennis, Bryan, Gregory, and The Karen and Reva Haydel Trust.

Decree
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the estate.
AFFIRMED.
GUIDRY, J., concurs in the result.
NOTES
[1] His first marriage ended in divorce.
[2] Shawn and Dawn were 23 years old at the time of Haydel's death.
[3] The executor elected to treat the income interest in the QTIP Trust property as part of the marital deduction for federal estate tax purposes.
[4] Louisiana inheritance and estate transfer taxes totaled $50,455.56. Of this amount, $34,414.22 constituted inheritance taxes.
[5] The term "residuary legatee" was used by the parties, and while we recognize the term "universal legatee" is the terminology used in the Louisiana Civil Code for this type of legatee, under the facts of this case, we consider the terms to be synonymous for purposes of this opinion and in light of the cited jurisprudence.
[6] Loretta filed a motion for new trial, which was denied by the trial court.
[7] Federal law specifically provides for the apportionment of estate taxes in certain cases of life insurance passing directly to the beneficiaries (26 U.S.C.A. § 2206), certain property subject to powers of appointment (26 U.S.C.A. § 2207), and certain property for which a martial deduction was previously taken (26 U.S.C.A. § 2207(A)).
[8] The substance of former LSA-C.C. arts. 1712 through 1715 was reproduced in current LSA-C.C. art. 1611 by 1997 La. Acts, No. 1421, § 1, effective July 1, 1999. LSA-C.C. art. 1611, comment (a).
[9] A donor may impose on a donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals. LSA-C.C.art. 1527.
[10] In so concluding, we find that LSA-R.S. 9:2435(A) and (B) would not serve as a legal bar to Haydel's imposition of the tax charges on the residual legacy in question. To the extent that this holding is in conflict with Succession of Lichtentag, 391 So.2d 1382, 1388 (La.App. 4th Cir.1980), we decline to follow such jurisprudence.